JAMES LOW *vs.* GRAND TRUNK RAILWAY COMPANY.

Cumberland. Opinion June 6, 1881.

*Customs officers — liability of wharf owners to. Due care.*
*Contributory negligence.*

The owners of a wharf where foreign laden vessels discharge, are liable to customs officers, who are required to visit the premises in the performance of their duties, for personal injuries received while in the exercise of due care, because of the unsafe or unsuitable condition of the wharf.

A customs officer whose duty is to watch for smugglers and prevent smuggling, may be in the exercise of due care, when in the course of his duty he passes over a wharf, where a foreign laden vessel is lying, in the night time and without a lantern.

Where duty requires one to be concealed, as when watching for smugglers and evil doers in the night time, the fact that he does not carry a light is not contributory negligence in an action for damages sustained by the negligence of one whose business imposed the duty upon the plaintiff.

ON EXCEPTIONS AND MOTION TO SET ASIDE THE VERDICT.

An action on the case to recover damages for a personal injury.

The plaintiff was a night inspector of customs in the Portland custom house. On the night of December 16, 1878, he was ordered by the collector, to look after smuggled goods from the English steamer Brooklyn, lying at the defendant's wharf. While passing over that wharf in the performance of that duty, he fell into a slip about eight feet deep and received the injury for which damages were sought to be recovered. The wharf was used at the time as a coal wharf, and the slip was for the purpose of wheeling coal on board steamers. It was admitted that there was no light nor railing around the slip at the time of the accident.

At the trial the court further instructed the jury :

"If you find, upon the evidence, that the presence of an English steamer at that point offered facilities for smuggling, and that this was a danger against which it was proper for customs officers and for plaintiff, in regular discharge of their duty, to be present to watch, and if you find that plaintiff was there in discharge of that duty with reference to that steamer, then I instruct you for the purposes of this trial, that an implied invitation on the part of defendant to the plaintiff might fairly arise from the character of the business conducted there, and from the character of plaintiff's duties."

The defendant requested the court to instruct the jury : That if the plaintiff, at the time of his injury, was not upon the wharf upon any business connected with the unloading of the coal, or with any business for which the premises could be or were legally used, he is not entitled to recover. Which instruction the court declined to give.

The defendant excepted to the instruction and refusal.

The jury returned a verdict for the plaintiff for thirty-five hundred dollars.

*D. W. Fessenden* and *Webb and Haskell*, for the plaintiff, cited : *Lord* v. *Kennebunkport*, 61 Maine, 462 ; *Rumrill* v. *Adams*, 57 Maine, 565 ; *Hill* v. *Packard*, 69 Maine, 158 ; *Whitney* v. *M. C. R. R. Co. Id.* 208 ; *Haskell* v. *New Gloucester*, 70 Maine, 305 ; *Smith* v. *London, &c. Docks Co.* Law Rep. 3 C. P. 326 ; *Wendell* v. *Baxter*, 12 Gray, 494 ; *Carleton*

v. *Franconia Co.* 99 Mass. 216; *Sweeny* v. *Old Colony & Newport R. R. Co.* 10 Allen, 372; *Elliott* v. *Pray*, 10 Allen, 378; *Parker* v. *Publishing Co.* 69 Maine, 173; *Campbell* v. *Portland Sugar Co.* 62 Maine, 561; *Stratton* v. *Staples*, 59 Maine, 94; Revised Statutes of United States, title xxxiv, c. 5; Unlading, § § 2867, 2868, 2869, 2870, 2871, 2872, 2873, 2874, 2875; c. 10, § § 3059, 3070.

*J. and E. M. Rand*, for the defendants.

In order to maintain this action, plaintiff must show that defendant has neglected to perform some obligation or duty that defendant owed to plaintiff. All of this class of cases turn upon the principle that negligence consists in doing or omitting something by which a legal duty or obligation has been violated. An owner of premises owes nothing to a mere trespasser, or to a mere licensee. Such persons go there at their own risk.

We apprehend that the plaintiff in this case must be regarded as a mere licensee, and cannot recover of the defendant damages for the injury he sustained.

The facts in evidence do not show that the plaintiff was upon the wharf by any invitation from defendant either express or implied. There was no express invitation; and whether there is an implied one in any particular case, depends upon the circumstances of that case.

Had this wharf been used for the ordinary purposes of a wharf, an invitation would be implied to all persons coming there to transact the business to which the wharf was appropriated. But even in such a case we do not perceive how an invitation could be implied to a customs officer to come there to prevent the wharf being used for a purpose to which it was not appropriated.

The instruction given by the court, we submit, was erroneous. How, from the mere existence of "facilities for smuggling" an invitation from defendant to plaintiff to attend there to prevent it can be implied, we are as yet unable to understand. Wharf was not appropriated to smuggling; and if such facilities grew out of the business conducted there (which is not the case) an invitation from defendant to plaintiff to attend there to prevent

it would not be implied. You might as well say that a doctor's sign is an implied invitation to a police officer to attend there to prevent people being killed.

We submit that the instructions given, and the refusal to instruct as requested, were erroneous.

We submit that the construction of this wharf in the manner shown, with this gangway, did not render the same unsafe or out of repair. It was a plain, wide gangway, reasonable in its character, and necessary for the purposes for which the premises were used. It was visible to every one passing upon the premises, was no concealed trap into which a man might ignorantly step or fall. In the daytime no one with eyes could fail to see it; and no one using even the least care could be injured by it. Owners have a right to construct their wharves as they find necessary or convenient for their business, provided they violate no duty which they owe to others.

The plaintiff's own negligence not only contributed to, but caused his injury; and he cannot recover.

We do not perceive the force of an argument urged upon the jury at the trial, that a customs officer is obliged to move about in the dark. If it were so, it would not help plaintiff's case, for it would only show that he was obliged to move about at his own peril. A customs officer may always take a lantern in a dark night, if his object is to prevent smuggling, and not merely to catch a smuggler.

Every person entering the premises of another is bound to exercise ordinary care and diligence, and failing in this, and suffering injury, he cannot recover. The principles governing this point are well settled; and were recognized by this court in the recent case of *Parker* v. *Pub. Co.* 69 Maine, 173, (p. 179).

BARROWS, J. The counsel for defendants, while recognizing as sound law the general principle that "an owner is bound to keep his premises in a safe and suitable condition for those who come upon and pass over them, using due care, if he has held out any invitation express or implied, by which they have been led to enter therein," stoutly contend that this custom house officer, who on the night of the accident was upon the defendants'

wharf, in the regular course of his duty to watch for smugglers and prevent smuggling from the steamer which was just hauling into the dock there from a foreign port, had no such invitation, but was a mere licensee. We cannot so regard him. His presence there was made necessary by the business to which the defendants had devoted their wharf, the reception of cargoes from foreign going vessels.

Plaintiff contends (and we think rightly both upon fact and law) that "the true statement of their (defendants') use and maintenance of the wharf is, that it was a wharf for the mooring of ships or vessels coming into port with cargoes from foreign lands, and subject to the regulations prescribed by law for such vessels. By putting their wharf to that use they assumed the responsibility of keeping it in a proper and suitable condition for the safe access of all persons whom that use required to come upon it. The business to which they devoted their property, under the laws of the United States called for the presence of the plaintiff (a night inspector at the custom house) there." His business was with a vessel which had arrived from a foreign port within the jurisdiction of the United States, and was not fully unladen, and his duty was to attend to every kind of commodity which might be on board. His right to visit the premises while that vessel was there was not merely the right of visiting in reference to the business for which the premises could lawfully be used. One of the most important portions of his duty was to go there to prevent the use of the premises illegally. He might lawfully conduct his visits as to time and manner in the way best calculated to detect and prevent smuggling.

If it were ever possible, it is too late now to attempt to limit the liability in such cases, as defendants' counsel would have us, strictly "to persons coming there to transact the business to which the wharf was appropriated." Numerous authorities go farther and charge the owner with a duty to those who come on his premises upon legitimate business connected by no means directly with that to which the structure is appropriated.

Thus one who came only to vend his own wares to the officers of a vessel lying in a dock, was regarded as entitled to the pro-

tection of an implied invitation from the Docks company, though it was urged that he was not on board on the ship's business. *Smith* v. *London & St. Catherine's Docks Co.* 3 L. R. C. P. 326.

In *Stratton* v. *Staples,* 59 Maine, 95, the only errand which the plaintiff had at the drug store was to inquire for the defendant's place of business, which she had passed in the darkness before coming to the insufficiently guarded roll-way into which she fell. She had no occasion to go to the drug store to "transact the business to which it was appropriated."

A railroad company owe a duty, in the matter of making the access to their station safe, to the hackman plying his vocation there to meet the trains as well as to the passengers from whom they derive a profit. *Tobin* v. *P. S. & P. R. R. Co.* 59 Maine, 183.

So do the owners of a private wharf to one employed to carry the mail from a steamboat to whose proprietors the owners of the wharf had let a part of it ; and this not on the ground of any contract between them and the plaintiff, but because of the duty which the law imposed upon them, to make and keep their wharf safe for all who were on it for a lawful business purpose, so long as they should permit it to be open and used. *Wendell* v. *Baxter*, 12 Gray, 494, citing : *Collett* v. *London & N. W. Railway Co.* 16 Ad. & El. 984, where the defendants were held liable for an injury suffered by an agent of the post office, whom the post master general required them to carry ; ERLE, J. remarking, " The defendants have a public duty to perform in conveying the servants of the public safely."

So here. The company owe a duty to all public officers whose attendance there is made necessary by the business carried on at their wharf. It is too subtle a distinction to say, that though an invitation to the customs officer whose duty it was to look after the landing of the coal which the steamer was about to discharge, might perhaps be implied, it can not be to one whose presence was needful to prevent the frauds on the revenue, for which the arrival of any foreign going vessel, whatever her cargo, affords facilities. It avails nothing to say that the owners had not dedicated their wharf to smuggling and did not

invite the plaintiff to come there to prevent it.    They had dedicated their wharf to the use of vessels bringing merchandise from foreign ports, and without watchfulness on the part of the customs officers it was sure to be misused.    The owners of places used for public entertainments do not dedicate them to pickpockets or mobs, but they none the less owe a duty to the policeman who attends when there is a great crowd, to prevent violence and depredation.    The instruction given by the presiding justice with respect to the circumstances which it was necessary for the jury to find in order to constitute an implied invitation to plaintiff, seems to have been carefully considered and affords the defendants no ground for complaint.    It follows that the requested instruction was rightly refused.    Under the motion to set aside the verdict as against evidence, defendants' counsel present with much force two points which always arise in cases of this description.    1. That defendants were guilty of no negligence in omitting to place a railing at the sides of the gangway into which the plaintiff fell, or a light to show where it was.    2. That plaintiffs's injury was caused by his own negligence.    We have given to the positions, taken in defence, the deliberate consideration which their importance merits.

We remark in the first place, that both questions were for the jury and their conclusions are not to be set aside unless it is found that they were manifestly wrong.

1. Was it a defect to leave this gangway, cutting the direct passage along the wharf transversely, and six or eight feet deep where the plaintiff fell, without a railing at its sides, or a light at night, when a newly arrived ship was lying there?

Everything which the defendants' counsel have said in support of their position that there was no negligence in so doing, might be said with equal force, in respect to the rollway cutting transversely the platform in front of the defendant's block of stores in *Stratton* v. *Staples*, 59 Maine, 94.    The question is, did a reasonable regard for the safety of those whom the use to which the defendants had devoted their wharf might be expected to bring there, require something in the way of safeguard at this gangway?

In principle the case is the same as all others, (and they are numerous) arising from injuries received in unguarded elevators and other arrangements and contrivances for business purposes in business places. In *Indermaur* v. *Dames,* 2 L. R. C. P. 311, though the unfenced shaft through which the plaintiff fell on defendant's premises, was constructed in the manner usual in the defendant's business, the defendant was not exonerated, as it appeared that the shaft could, when not in use, have been fenced without injury to the business.

The case is an instructive one, as reported from the Exchequer Chamber, *ubi supra,* and also in the discussion upon the rule to set aside the verdict and grant a new trial in the Common Pleas, 1 L. R. C. P. 274. In fitting up a place for business purposes, one is at liberty to consult his own convenience and profit, but not without a reasonable regard for the safety of those whom his operations bring upon his premises, upon lawful business errands. In particular, everything which may operate as a trap or pitfall for those not familiar with the place or moving in a dim light, is to be avoided, if reasonable care will accomplish security to life and limb in that respect. Counsel ask in substance, why call upon the defendants to fence this gangway more than the sides or end of the wharf? It is a sufficient answer that a railing at the sides and end would, even if movable, be likely to be an unreasonably troublesome obstruction to the business for which the wharf was prepared, and it would certainly be from its extent unreasonably expensive to maintain. Not so in either respect at the gangway.

Nor is there so great a liability to accident at the sides or end as there is in such a gangway, midway, where one's eye catches a sense of security from seeing in an uncertain light the bulk of the wharf and of the vessel lying beside it extending before him. Considering how easy it would have been by means of a single piece of railing, fitted upon posts of proper height, movable like those at railroad crossings if desired, to guard against any such mischief as happened here, we think the jury did not err in saying that a reasonable regard for the safety of human beings required the defendants either to put it there or take some other

means to warn a man, engaged as the plaintiff was, of danger at the gangway.

II. The question as to contributory negligence on the part of the plaintiff was a more doubtful one.

Defendants' counsel put the dilemma thus : "If the night is light enough to see the gangway, no railing or light is necessary to enable a person to avoid it, and if the night is too dark to allow of its being seen, then a person groping around in the dark and unconsciously walking into it is guilty of such negligence as to preclude him from recovering." But if this plausible statement is absolutely correct, there never can be an accident of this description for which the injured party can recover. The idea seems to be that there is no necessity for any precaution on the part of the wharf owners, because constant vigilance on the part of those who come there when it is light enough to see the danger will enable them to avoid it ; and, duty or no duty, they must not come without a light in the night time, or they will be set down as wanting in ordinary care, and so forfeit their right to protection or compensation. The argument establishes, if anything, too much. The questions are not of a character to be disposed of by a little neat logic. They are rather, as remarked by the court in *Elliott* v. *Pray*, 10 Allen, 384, "questions which can be best determined by practical men on a view of all the facts and circumstances bearing on the issue." No such sweeping syllogism as this presented by defendants' counsel can be adopted as a rule of decision. A man may be deceived by a half light, such as is described in the testimony here, and, using due care himself, may meet with an accident by falling into a chasm where he was not bound to expect to find one unguarded, and in such case, if he is not a mere licensee or trespasser, and the owner of the premises owes him a duty, he is entitled to his remedy.

It is noticeable that in arguing this point on the motion, the learned counsel for defendants fall back in part, upon their original contention that the customs officer "was obliged to move about at his own peril." Not so. His duty carried him there in

consequence of, and in connection with the business which defendants had established there. The jury probably thought that if he went as a section of a torchlight procession he might as well have stayed at home; that he was not in search of an honest man, and had no need of a lantern; that it would take a cordon of custom house officers, exhibiting themselves with lanterns, numerous enough to surround the vessel constantly from the time she hauled into the wharf till she was unloaded, to prevent the mischief, while prudently conducted observation by one or two watching at the right times and seasons without making their presence known, would answer the same purpose. Seeing that the defendants did owe a duty to the public officer, and seeing too how easily they might, to all appearance, by a little precaution, have prevented his being made a cripple, if the "practical men" before whom the case was tried made allowances for the liability of the human senses to deception in a dim light, and acquitted him of a want of ordinary care in the premises, we are not satisfied that the conclusion they reached on this question of contributory negligence, is so plainly unjustifiable as to require us to send the case to a new trial.

No complaint is made as to the amount of damages.

*Motion and exceptions overruled.*

APPLETON, C. J., WALTON, VIRGIN, LIBBEY and SYMONDS, JJ., concurred.