[S. F. No. 6372.   Department One.—March 30, 1914.]

JOSEPH WILSON, Appellant, v. UNION IRON WORKS DRY DOCK COMPANY (a Corporation), Respondent.

APPEAL—NOTICE OF APPEAL—RECITAL OF DATE OF ENTRY OF JUDGMENT. A notice of appeal which states that the plaintiff appeals "from the judgment of nonsuit and dismissal therein entered in said superior court on the 18th day of January, 1912," is not open to the objection that the appeal was thereby taken from the ruling granting the nonsuit, not from the final judgment, if the judgment was in fact rendered on such date although not entered in the minutes until February 10, 1912.

ID—NOTICE OF APPEAL—GIVING INCORRECT DATE OF ENTRY OF JUDGMENT.—The giving of an incorrect date of the entry of judgment in the notice of appeal therefrom, does not invalidate the appeal, if it clearly appears that but one such judgment was ever entered in the case.

DRY DOCK COMPANY—DUTY TO MAINTAIN SAFE GANG-PLANK FOR PERSONS LEAVING VESSEL.—A corporation which maintains a dry dock for the use of vessels in need of painting or repairs, and keeps gang-planks to put out to vessels when they are docked so that persons on board may leave by that means, is bound to use at least ordinary and reasonable care to provide sound gang-planks and see that they are properly shored for the use of people leaving the vessel.

ID.—DEFECTIVE GANG-PLANK—INJURY TO CUSTOMS OFFICER.—Such duty is owing to a United States inspector of customs, aboard a vessel

in the performance of his duty, and if he is injured in leaving the ship over an unsafe gang-plank, by its giving way in the middle, the dry dock company may be held liable therefor.

ID.—CONTROL OF SHIP END OF PLANK BY OFFICERS OF VESSEL—EFFECT ON LIABILITY OF DOCK COMPANY.—The fact that the officers and men of the vessel took charge and handled the ship end of the gang-plank does not change or affect the duty of the dry dock company in the matter; there being no defect in the fastenings at the ship end, and the evidence justifying the conclusion that the giving way of the gang-plank was caused by the weak condition of the stringers composing it and the failure to shore it up, both of which were under the control and charge of the dry dock company.

APPEAL from a judgment of nonsuit of the Superior Court of the City and County of San Francisco. George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

Metson, Drew & Mackenzie, Reed, Black & Reed, and Horatio Alling, for Appellant.

Wilson & Wilson, for Respondent.

SHAW, J.—The plaintiff sued to recover damages for personal injuries alleged to have been caused by the defendant's negligence. At the close of the evidence for the plaintiff the court, on defendant's motion, granted a nonsuit. The plaintiff appeals.

The respondent objects to the consideration of the appeal on the ground that it was taken from the ruling granting the nonsuit, and not from the final judgment. The notice of appeal states that the plaintiff appeals "from the judgment of nonsuit and dismissal therein entered in said superior court on the 18th day of January, 1912." The judgment was in fact rendered on that date. This appears from the reporter's transcript of the proceedings on the trial, but not in the judgment-roll. The judgment of nonsuit or dismissal as entered by the clerk in the minutes, as required by section 581 of the Code of Civil Procedure, was not made until February 10, 1912. It is this discrepancy upon which the respondent relies. There is no merit in the objection. The entry in the minutes under date of February 10, 1912, was a judgment

of nonsuit. (Code Civ. Proc., sec. 581; *Matthai* v. *Kennedy,* 148 Cal. 699, [84 Pac. 37].) The notice of appeal incorrectly gives the date of the entry of the judgment appealed from. This defect, however, does not invalidate the appeal, since it clearly appears that but one such judgment was ever entered in the case. (*Foss* v. *Johnstone,* 158 Cal. 123, [110 Pac. 294]; *Swasey* v. *Adair,* 83 Cal. 137, [23 Pac. 284]; *Weyl* v. *Sonoma etc. Co.,* 69 Cal. 204, [10 Pac. 510]; *Anderson* v. *Goff,* 72 Cal. 66, [1 Am. St. Rep. 34, 13 Pac. 73]; *Mitchell* v. *Gray,* 8 Cal. App. 424, [97 Pac. 1060]; *Larson* v. *Larson,* 15 Cal. App. 536, [115 Pac. 340].)

The plaintiff was in the act of disembarking from the steamer ''Mongolia,'' over a gang-plank furnished for that purpose by defendant; when, by reason of the unsafe condition or weak construction of said gang-plank, it gave way in the middle, causing the plaintiff and others who were also disembarking, to fall some fifteen or twenty feet to the bottom of defendant's dry dock. The plaintiff was severely injured by the fall. The court below appears to have directed the nonsuit upon the theory that, under the circumstances of the case, the defendant owed no duty to the plaintiff to provide a sound and safe gang-plank upon which he could leave the vessel or to put the gang-plank in use in a safe and sound condition.

The plaintiff was a United States inspector of customs at the port of San Francisco. On the morning of the accident, he was detailed to duty in connection with the steamer ''Mongolia.'' His duty was to board the ship at pier 44, stay on board until it reached the defendant's dry dock, and when the gang-plank was made fast at the dry dock to enable persons to leave the vessel there, to go down first and allow no one to precede him so that other custom house officers who were to be there awaiting his arrival and who would be standing at the foot of the gang-plank, could go aboard immediately and search every one on board for dutiable articles before allowing such persons to leave the ship. The plaintiff went aboard as ordered and reached the dry dock. Five custom house searchers in uniform were at the dock awaiting the arrival of the steamer, in order to go aboard there and make the required search. When the gang-plank in question was taken in and lashed to the vessel at the dry dock to allow

people on board to go ashore, the plaintiff went upon it, followed by a number of other persons, and had proceeded about half way to the end of it when it broke and precipitated all those upon it to the bottom of the dock. The "Mongolia" was taken to the dry dock to have her bottom painted. The gang-plank was one of those provided by the defendant at its dry dock for use when steamers were docked there. Preparatory to that occasion it had been rolled forward upon the dock by the defendant's employees to be ready when the "Mongolia" arrived. The work of placing it for use was performed by the employees of the steamer on board and by the employees of the defendant on the dock in conjunction, those on the steamer attending to its lashings at the steamer end and those of the defendant to the placing of it in position at the dock end. After it was lashed and properly placed, some one of defendant's employees engaged in the work on the dock called out "all right," whereupon the plaintiff and others walked out upon it as above stated. In using this gang-plank previously it was usually shored up with props beneath, midway of its length, but on this occasion it was not shored. There was evidence to the effect that the stringers of the gang-plank were old, in bad condition and somewhat decayed, and that this was the cause of the accident. The evidence also tended to show that the defendant maintained this dry dock for the use of vessels which needed painting or repairs and that as a part of defendant's business it kept this and other gang-planks to put out to vessels when they were docked in order that those on board might leave the vessel by that means, and also that in the usual course of business when a vessel engaged in foreign trade, as was the "Mongolia," was docked there, it would be accompanied by custom house officers, as in this case, to search persons aboard and prevent the taking ashore of dutiable property.

Under these circumstances, it is clear that the defendant owed to all persons lawfully and properly on board such vessel on arrival at the dock and there wishing to leave it, the duty of providing a safe and sound gang-plank for their use. These gang-planks were provided by the defendant and were kept by it for the purpose for which this one was used on this occasion and as a regular part of its business. People were expected to walk over it from the ship to the dock. For

their safety, a sound gang-plank was required with props therefor if such were necessary on account of the weakness of the plank or the length of the span from the dock to the ship. It was, therefore, incumbent upon the defendant to use at least ordinary care to provide sound gang-planks and see that they were properly shored. It is not necessary here to determine whether it was, to that extent, a carrier of passengers, and bound as such to use the utmost care and diligence for their safe carriage as provided in section 2114 of the Civil Code. It was, at all events, bound to exercise reasonable and ordinary care for the safe carriage of those whom it had reason to expect would avail themselves of that means of leaving the vessel.

The plaintiff stood in a relation to the defendant which made this duty owing to him. He was aboard the vessel and left it over this gang-plank in the performance of his duty, a duty which was usually performed by custom house officers in such cases and of which it is to be inferred the defendant had notice. He was, therefore, one of the persons for whose use this gang-plank was provided. We do not mean to say that the defendant would be absolved from liability if the plaintiff had been casually aboard the vessel as a mere visitor. The question is not involved and it is not necessary to decide it.

The fact that the officers and men of the vessel took charge and handled the ship end of the gang-plank does not change or affect the duty of the defendant in the matter. There was no defect in the fastenings at the ship end. The evidence justified the conclusion that the fall was caused by the weak condition of the stringers composing the gang-plank and the failure to shore it up, both of which were under the control and charge of the defendant.

There is no direct evidence that the defendant's servants were aware of this weak condition of the plank, but the jury might well have inferred that they had such notice from the fact that on previous occasions this gang-plank had been shored up when in such use. We do not mean to say that under the circumstances proof of such notice devolved upon the plaintiff, or that the maxim *res ipsa loquitur* does not apply.

The decisions in *Grundel* v. *Union Iron Works,* 141 Cal. 566, [75 Pac. 184]; *Pennebaker* v. *San Joaquin etc. Co.,* 158 Cal.

579, 139 Am. St. Rep. 202, 31 L. R. A. (N. S.) 1099, 112 Pac. 459], and *Means* v. *Southern Cal. Ry. Co.*, 144 Cal. 473, [1 Ann. Cas. 206, 77 Pac. 1001], are not applicable to the facts of this case. The first was a case in which the person injured went from the shore to the vessel over an insecure gang-plank, but did so without the knowledge or permission of the defendant and with no business there which was in any way connected with the defendant or in which it was interested. He was either a trespasser or a mere licensee. The second case was that of a public fireman who, upon an alarm of fire and as a part of his duty, entered the yard of a burned building and was there injured by electricity from live wires which had become unfastened from the effects of the fire. The defendant was a power and light company which furnished the electricity for those and other wires of the city lighting system. In the course of the argument the court referred to the common law doctrine that "a fireman entering a building under imperative necessity is but a licensee, who assumes the risks as he finds them, and to whom the owner of the premises owes no special duty to maintain those premises in a safe condition." This proposition rests upon the peculiar relations of the parties and the imperative public necessity under which they must act at the time, as is more fully set forth in *Woodruff* v. *Bowen*, 136 Ind. 431, [22 L. R. A. 198, 34 N. E. 1113]. These did not exist in this case and the doctrine is not applicable. In *Means* v. *Southern Cal. Ry. Co.*, the plaintiff was injured by the explosion of sulphuric acid in defendant's freight depot. The plaintiff entered the depot without the knowledge of the defendant or its servants and upon business of his own not in any way connected with that of the defendant. He came under the rule applicable to trespassers or mere licensees. The mere fact that the plaintiff in this case was a public officer performing his public duty does not bring the case within the fireman rule. There was no sudden emergency requiring immediate action by the defendant and the gang-plank was intentionally provided for this occasion and for the use of plaintiff and others leaving the vessel.

The case comes within the principles stated and applied in the following authorities: 29 Cyc. 454; 21 Am. & Eng. Ency. of Law, p. 471; *Furey* v. *New York etc. Co.*, 67 N. J. L. 274, [51 Atl. 505]; *Anderson etc. Co.* v. *Hair*, 103 Ky. 201, [44 S. W.

658] ; *Swords* v. *Edgar,* 59 N. Y. 30, [17 Am. Rep. 295] ; *Low*
v. *Grand Trunk Ry. Co.,* 72 Me. 313, [24 Am. Rep. 331] ;
*Campbell* v. *Portland,* 62 Me. 560, [16 Am. Rep. 502].
     The judgment is reversed.

Angellotti, J., and Sloss J., concurred.

Hearing in Bank denied.