[Civ. No. 10970. Second Appellate District, Division One.—August 31, 1936.]

LOREN PALMER, Respondent, v. O. N. CRAFTS, Appellant.

Walter S. Coen and Horace W. Danforth for Appellant.

Sidney A. Moss, Baile, Turner & Lake and Allen T. Lynch for Respondent.

WHITE, J., *pro tem.*—This is an appeal by the defendant from a judgment in favor of plaintiff made and entered on the verdict of a jury after trial, in which proceeding plaintiff recovered damages for injuries sustained by him through the alleged negligence of defendant. The facts, so far as germane to this appeal, are disclosed by the record to be that in 1934 and prior thereto appellant was engaged in the business of operating carnival shows, and in pursuance thereof had arranged for his show to appear at the Los Angeles County fair in Pomona, opening on September 15, 1934. Prior to the last-named date, respondent arranged with appellant to conduct a side-show to appellant's attractions at the county fair. The terms of the agreement provided that appellant and respondent were to receive the gross intake of the side-show share and share alike. Appellant was to furnish the electricity, space and license, while respondent agreed to furnish a tent, ticket box, "bally platform", banners, and everything necessary to set up the show. It appears that respondent described to appellant's representative the tent which the former proposed to use, but appellant's agent informed respondent the tent would not be acceptable, and that respondent would have to obtain a regular concession tent, which he could procure from the firm of Downie Bros. Respondent complied with this suggestion and rented a satisfactory tent,

with poles and stakes with which to erect the same. The stakes in question were Ford axles. On September 14th the tent was erected by respondent and his helpers on a location designated by appellant's representative, and thereafter respondent prepared to set up his "bally platform" and "banner lines". The evidence indicates that a representative of appellant objected to the supports being used by respondent and insisted upon respondent's using supports furnished by appellant in order to make for a uniformity of respondent's "banner line" with others erected along the midway. Supports being obtained out of one of appellant's trucks, and stakes being also secured from a trailer bearing appellant's name, respondent and his assistant commenced to set up the "banner line" supports, using the stakes obtained as aforesaid from appellant's trailer. These stakes also were Ford axles, with a cogwheel attached by means of a "collar" to the top in such a manner as to make a stake head. There is evidence in the record that one Burke, an employee of appellant, instructed respondent and his assistant how to proceed and directed another employee of appellant, named Slayton, to assist. In their work up to this point respondent and his assistant had been using a sledge-hammer belonging to the latter, but on the advice of Slayton, exchanged it for one provided by him. Completing the erection of the "banner line" supports, respondent asked appellant's representative, Burke, to inspect the same, and was informed by the latter that it was out of line and would have to be changed. The change being accomplished, and meeting with the approval of Burke, the stakes were driven all the way into the ground, the electric wires were strung and the current cut in. Respondent and his party thereupon returned to Los Angeles.

On the following day, September 15th, the date of the accident, respondent and two associates returned to the fair grounds about 10 o'clock in the morning, bringing with them the paraphernalia used in respondent's sideshow. Respondent testified that he started to unload and set up his "bally platform" and ticket box, but was interrupted by appellant's representative, Burke, who complained that respondent's "banner line" was so constructed that it was throwing all the other "banner lines" out

of line, and that respondent would have to change it. Respondent testified that he did not know how to go about making the change, but assumed a crowbar would prove helpful, and that he asked Burke for one, but was informed by the latter that none was available; that Burke advised respondent that the way to accomplish the removal of the stakes supporting the "banner line" was by striking the stake on the head with a sledge-hammer, loosening it, then reaching under it and working it up; that by this means respondent could gradually work the stakes out of the ground. Respondent further testified that appellant's representative, Burke, assigned another employee of appellant to assist respondent in moving back the "banner line". Respondent testified that he then picked up a sledge-hammer belonging to Mr. Grimmieh, one of respondent's helpers, and struck several blows on the head of a stake; that he then tried to lift the stake up, but met with no success; that he then asked appellant's employee to get him a crowbar, but was informed that none was available, and was further advised, according to respondent's testimony, that the latter was working according to approved methods and to continue his efforts. Proceeding with the method of hitting the stake in an effort to loosen it for removal, respondent suddenly felt something hit him in his left eye. The evidence indicates that respondent was struck by a piece of metal that "chipped" off the cogwheel on top of the Ford axle being used as a stake. As a result of the injury thus sustained, respondent lost the sight of his eye. There is in the record some evidence to the effect that it was customary to use these Ford axles as stakes, while testimony was also given that these steel stakes were prone to "chip" when hammered, and that the custom in the show business was to "wrap" the axle so that flying chips therefrom would not prove injurious. There was also evidence to the effect that neither appellant nor anyone else warned respondent of impending danger in connection with hammering these axles used as stakes, and respondent testified he had never used such axles for stakes prior thereto.

Appellant assails the judgment on the ground that the complaint fails to state a cause of action, and we are of the opinion that this contention must be sustained, for

the reason that it seems to us that the relation existing between appellant and respondent was that of a joint association in a common enterprise for profit, but falling short of a partnership. While it is true respondent possibly did not have the power to bind the joint adventure, nor to take part in the management of the enterprise, yet in a joint adventure one or more of the partners oftentimes does not have those usual powers of a general partner.

This action sounds in tort, and a tort, in contemplation of law, consists in a violation of a duty imposed by general law or otherwise upon persons occupying the relation to each other which is involved in a given transaction. (*Hallidie* v. *Enginger,* 175 Cal. 505 [166 Pac. 1].) As we view the complaint herein, plaintiff seeks to recover because defendant neglected to do something which he ought to have done, whereby plaintiff suffered injury. This we gather from the averments of the complaint alleging that defendant "negligently failed to provide plaintiff with any proper tool or tools with which to loosen and remove the same [referring to the stakes in the ground], and negligently failed to warn plaintiff of the danger of striking the metal cogwheel on the top of said improvised stake with a metal hammer, and negligently directed and permitted plaintiff to attempt to loosen said improvised stake by striking the side of the cogwheel forming the head of said improvised stake with a light sledge hammer".

In order to constitute an actionable tort, there must be a legal duty—imposed by statute or otherwise—owing by the defendant to the one injured, for in the absence of such a duty any damage caused is injury without wrong— *damnum absque injuria.* (*Wilson* v. *Union Iron Works Drydock Co.,* 167 Cal. 539 [140 Pac. 250] ; *Mernin* v. *Cory,* 145 Cal. 573 [79 Pac. 174] ; *Smith* v. *Whittier,* 95 Cal. 279 [30 Pac. 529] ; *People* v. *Schmitz,* 7 Cal. App. 330, 370 [94 Pac. 407, 15 L. R. A. (N. S.) 717].) The existence of such a duty must appear in the allegations of the complaint as a necessary prerequisite essential to the statement of a cause of action; and we find in the averments of the complaint before us no such duty existing, nor does a reading of the evidence in this case indicate the existence of any such duty on the part of appellant to respondent. In view of the relation existing between the parties here, as

shown by the pleadings, coupled with the circumstances surrounding the accident where appellant and respondent were engaged in a joint enterprise and respondent was injured while performing an act in the furtherance of their joint adventure, we are unable to perceive the existence of any duty reposing upon appellant the violation of which resulted in injury to respondent. In order to constitute actionable negligence, there must exist three essential elements—namely, a duty or obligation which the defendant is under to protect the plaintiff from injury; a failure to discharge that duty; and injury resulting from the failure. Not only must the complaint disclose these essentials, but the evidence must support them, and the absence of proof of any of them is fatal to a recovery. (*Means* v. *Southern California Ry. Co.*, 144 Cal. 473, 478 [77 Pac. 1001, 1 Ann. Cas. 206].) Neither the facts stated in the complaint nor the evidence introduced at the trial meet all these essential requirements, but on the contrary, in our opinion, show an entire absence of any duty resting upon appellant toward respondent with reference to the latter's safety in the manner of his doing the things which resulted in the accident and injury to respondent, and hence the absence of one of the essential requirements to a recovery under the principle of law referred to.

The conclusion we have arrived at on this issue renders it unnecessary to discuss or decide other points urged on this appeal.

The judgment is reversed and the cause remanded, with directions to the court below to enter judgment for the defendant.

York, Acting P. J., and Doran, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 29, 1936.