**68**

Catherine S. WEINSTEIN, Administratrix of the Estate of Albert Weinstein, Deceased, Appellant in Appeal No. 12042.

v.

UNITED STATES,
Appellee,

Joseph J. ALESSANDRINE, Appellant in Appeal No. 12043,

v.

UNITED STATES,
Appellee.

Nos. 12042, 12043.

United States Court of Appeals
Third Circuit.

Argued Feb. 18, 1957.

Decided May 3, 1957.

———————

Martin Vinikoor, Philadelphia, Pa. (Vinikoor & Criden, Philadelphia, Pa., on the brief), for appellants.

Lester S. Jayson, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., W. Wilson White, U. S. Atty., Philadelphia, Pa., Paul A. Sweeney, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before MARIS, McLAUGHLIN and STALEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

These damage suits were brought under the Federal Tort Claims Act, 28 U.S. C. §§ 1346, 2674, 2680. Appellant Weinstein's decedent and appellant Alessandrine were employees of Publicker Industries, Inc. at the latter's alcohol denaturing plant and bonded warehouse, Philadelphia, Pennsylvania. On May 26,

1955, there was an explosion and fire at that place as a result of which Albert Weinstein was killed and Alessandrine injured. The claims arising from those casualties were dismissed as not stating causes of action.

Concededly the asserted liability against the government is solely predicated upon the Internal Revenue Code and regulations. The complaints do not allege occupancy of the premises by the government but say that within the scope of their employment, its employees "supervised and controlled the building" and by reason of causing the building to be locked during certain hours without proper precautions created a highly dangerous condition through the accumulation of fumes, etc. This is not stated to have caused the explosion and fire but appellants do charge that these were "proximately caused and brought about by the negligence and wrongful acts and conduct both of omission and commission on the part of Defendant, its agents * * * within the scope of their employment, under circumstances where the United States, if a private person would be liable * * *."

Not only was there no occupancy by the defendant but the only reasonable inference from the amended complaints and statement on behalf of appellants is that the building where the explosion occurred was owned and occupied by Publicker Industries, Inc. in its bonded warehouse and distillery business. Government inspectors were on the premises under the basic authority of 26 U.S.C. § 5305. This directs the Secretary of the Treasury or his delegate to issue regulations respecting the establishment, bonding and operation of authorized industrial alcohol plants, denaturing plants, and bonded warehouses and the distribution, sale, export and use of alcohol to secure the revenue, to prevent diversion of the alcohol to illegal uses and to obtain the highest possible efficiency in the nonbeverage and allied alcohol industries "consistent with the interests of the Government, and which shall insure an ample supply of such alcohol and promote its use in scientific research and the development of fuels, dyes, and other lawful products." [1]

There are various regulations under the above section of the Code the fundamental purpose of which is to enable the government through its agents to fully check the alcohol involved in order that the proper revenue be collected. Section 26 C.F.R., 1955 Supp., Section 182.1 et seq. In line with this certain aspects of construction and equipment are covered but these can be varied under Section 182.103 where applicants show that proposed changes "will afford as much security and protection as the construction and equipment prescribed." This among other things applies to ventilation, the need for which is recognized in Sections 182.41, 182.49. Beyond doubt the regulations contemplate that such plants afford ample opportunity for strict scrutiny and supervision by the government but those measures in no way contemplate the government taking over the business. They are merely to fully protect its tax revenue emanating from alcohol. Producing and storing alcohol are carefully regulated activities primarily because alcohol is a highly remunerative source of tax income. However, within the limits of those revenue restrictions owners and operators of

---

1. 26 U.S.C. § 5305 reads in full:

"The Secretary or his delegate shall issue regulations respecting the establishment, bonding, and operation of industrial alcohol plants, denaturing plants, and bonded warehouses authorized by this subchapter, and the distribution, sale, export, and use of alcohol which may be necesary, advisable, or proper, to secure the revenue, to prevent diversion of the alcohol to illegal uses, and to place the nonbeverage alcohol industry and other industries using such alcohol as a chemical raw material or for other lawful purpose on the highest possible plane of scientific and commercial efficiency consistent with the interests of the Government, and which shall insure an ample supply of such alcohol and promote its use in scientific research and the development of fuels, dyes, and other lawful products."

that type of undertaking run their own shows as far as the authority of the Code is concerned. There is not the slightest hint that under the Code there exists a permissible inference that the government was possessor or occupant of the Publicker premises or was there engaged in manufacturing alcohol or operating a bonded warehouse. Publicker, as the owner and operator of the building and business, has no reason in the Code or regulations for functioning under dangerous circumstances. Section 5305 and the regulations contain no excuse for the creation of such conditions or the sanctioning of them, nor any indication that the shifting of Publicker's obligation over to the government would be countenanced. In United States v. Witten, 1892, 143 U.S. 76, 79, 12 S.Ct. 372, 373, 36 L.Ed. 81, distilled spirits were stolen from a bonded warehouse. Relief from taxes on these was sought on the proposition the government agents had been negligent in security measures. The Court held: "The only duty which the revenue officers owed in regard to the security of the warehouse and safekeeping of the spirits therein, was to the government, and not to the defendants; and any negligence of those officers gave the defendants no rights against the government * * *." That exact principle absolving the government from a duty to protect the warehouseman's property would also have applied if an employee of the warehouse had been killed in the course of the robbery. In turn it follows that there is absence of responsibility on the part of this appellee for the death and injury of Messrs.

Weinstein and Alessandrine, employees of the operating owner and on duty for it at the time of the accident.

The government inspectors in and about the building where the explosion occurred admittedly were present under the Internal Revenue Code. It was because they were there and were satisfied the regulations were being obeyed that the plant was in production. Under these circumstances as was held in Anderson & Nelson Distilleries Co. v. Hair, 1898, 103 Ky. 196, 44 S.W. 658, 659, "Without his (the government inspector) presence the distillery could not run. It must therefore be held that appellee was at appellant's distillery at the implied invitation of appellant and not [as] a mere licensee." [2] Restatement of Torts, Section 345, Com. d, says that "When the presence of an inspector or other official on the land is necessary to the possessor's lawful conduct of his business, the official is a business visitor of the possessor." The basic allegations of appellants' claims cannot be validly distinguished from this principle. Under it appellee's agents were business visitors representing their government which had no duty to plant employees arising out of the Publicker operation and no responsibility for their injuries and death in the course thereof.

The appellants' remaining argument is that they were entitled to submit proofs under the Tort Claims Act. The allegations of the complaints are as we have seen. They state " * * * that the prohibited hours of operation and locked building enforced by the Defendant

2. For some examples of other decisions holding that public officers or inspectors who enter another's premises in the performance of their public duties are business visitors under a legal privilege see: Massey v. F. H. McGraw & Co., 6 Cir., 1956, 233 F.2d 905 (United States inspector of construction work); Cudahy Packing Co. v. McBride, 8 Cir., 1937, 92 F.2d 737 (United States meat inspector); Wilson v. Union Iron Works Drydock Co., 1914, 167 Cal. 539, 140 P. 250 (United States customs inspector); Low v. Grand Trunk Railway Co., 1881, 72 Me. 313 (United States customs inspector); Miller v. Pacific Constructors, 1945, 68 Cal.App.2d 529, 157 P.2d 57 (United States Bureau of Reclamation inspector); Mitchell v. Barton & Co., 1923, 126 Wash. 232, 217 P. 993 (United States sanitary inspector); Howland v. Morris, 1940, 143 Fla. 189, 196 So. 472, 128 A.L.R. 1013 (city building inspector); Pickwick v. McCauliff, 1906, 193 Mass. 70, 78 N.E. 730 (municipal construction inspector); Robey v. Keller, 4 Cir., 1940, 114 F.2d 790 (city library construction inspector).

without proper precautions, warning and regulations, created a highly dangerous condition, * * * " and that it " * * was negligent in failing to take proper precautions for the protection of employees working in and about Building #160." The first theory attacks the existent regulations and the second asserts that there should have been more and better regulations. These contentions are specifically eliminated from the scope of the Tort Claims Act by (a) of the Exceptions to the Act, 28 U.S.C. § 2680 which reads:

"The provisions of this chapter and section 1346(b) of this title shall not apply to—

"(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

Both of the charges arise squarely under the above exception. They are wholly based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the government. The first deals with the locking of the building itself which was in accordance with regulations under Section 5305 of the Code and the second cites failure to promulgate further regulations for the protection of persons employed in the building. Appellants' idea seems to be that at the trial of this case the complete Internal Revenue Code and regulations would be introduced or at least everything relevant to the supervision of the production and distribution of alcohol; all this in the hope that some regulation

might be found which would be of assistance to their averment of government negligence. But even if some apparently helpful language were revealed it would still be within (a) of the Exceptions for it necessarily would derive directly from the Internal Revenue Code and regulations.

■ The legislative history of the Tort Claims Act clearly reveals that the revision of the discretionary exception as it had first appeared in the then bill was "designed to preclude * * * application of the act to a claim against a regulatory agency * * *. Since the language used * * * exempts from the act claims against federal agencies growing out of their regulatory activities it is not necessary expressly to except such agencies * * * by name * * *."[3] It is well settled that "discretionary function" embraces regulation. Dalehite v. United States, 1953, 346 U.S. 15, footnote 21, at pages 29, 34, 73 S.Ct. 956, 964, 97 L.Ed. 1427; Coates v. United States, 8 Cir., 1950, 181 F.2d 816, 818, 19 A.L.R.2d 840. The Dalehite case revolved around a Coast Guard regulation of shipboard loading of cargo. Other decisions where the discretionary exception of the Act was held to bar claims based upon governmental regulations are Schmidt v. United States, 7 Cir., 1952, 198 F.2d 32, certiorari denied 1952, 344 U.S. 896, 73 S.Ct. 276, 97 L.Ed. 693; Matveychuk v. United States, 2 Cir., 1952, 195 F.2d 613, certiorari denied 1952, 344 U.S. 845, 73 S.Ct. 61, 97 L.Ed. 657; Chournos v. United States, 10 Cir., 1951, 193 F.2d 321, certiorari denied 1952, 343 U.S. 977, 72 S.Ct. 1074, 96 L.Ed. 1369; Powell v. United States, 10 Cir., 1956, 233 F.2d 851.

The Dalehite opinion governs this phase of the case. Under it the taxwise regulation of the Publicker plant was a discretionary function barred by Exception (a) from the operation of the Tort Claims Act.[4] Those were the facts

---

3. Memorandum for the Use of the Committee on the Judiciary, H. of Rep., 77th Cong., 2d Sess., Explanatory of Committee Print of H.R. 5373 (Jan. 1942), p. 8.

4. The government also urges that the claims are prohibited by reason of Exceptions (c) and (i) to the Tort Claims Act. These read:

presented by the complaints and by reason of them the defendant was entitled to dismissal on that ground also.

The judgments of the district court are affirmed.

"(c) Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law-enforcement officer.

" *    *    *    *    *    *

"(i) Any claim for damages caused by the fiscal operations of the Treasury or by the regulation of the monetary system."

In view of our above holding that Exception (a) applies we do not pass upon these at this time.