## KAUFMAN v. ATLANTIC GREYHOUND CORPORATION.

### No. 120.

District Court, S. D. West Virginia, at Huntington.

Oct. 14, 1941.

J. J. N. Quinlan and Robert S. Starcher, both of Huntington, W. Va., for plaintiff.

John E. Jenkins, of Huntington, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

This is an action for personal injuries which plaintiff claims to have incurred while alighting from defendant's bus at Huntington, West Virginia, about eleven o'clock, Sunday morning, May 21, 1939. A trial jury awarded plaintiff a verdict of $1,250, and defendant has moved to set aside this verdict and to award it a new trial.

Plaintiff testified that as she alighted as a passenger from defendant's bus, the driver closed the door on her. She claimed that as she had one foot on the pavement the door struck her on the left side of her body with such force that she stumbled forward into the street for twelve to fifteen feet, where she fell to her hands and knees; that the driver got out of the bus and told her that "he was very sorry he struck me with the door", and that "I thought you was clear of the door or I wouldn't have started to close it"; and that the driver apologized to her over and over for striking her with the door. She stated that, although her entire left side, including arm and shoulder, were numb from the blow, she told the bus driver she was not hurt, and signed a card to that effect, because she "was in a hurry to get away from there" and because she was "scared and nervous and hurt". She said that the driver asked her if she wanted to go to a doctor but she declined for the same reasons. Her version of what happened is not corroborated by any other witness.

The bus driver testified that the door was not closed while plaintiff was alighting; that as plaintiff stepped to the street she seemed to have lost her balance and staggered back lightly against the open door; that she did not stumble forward and fall to the street on her hands and knees. He stated that he got off the bus and asked her if she was hurt, and that after she answered in the negative that he said: "Well, I would like for you to go down to the terminal with me and we will call a doctor and examine you to be sure." She replied, "No, I am a nurse myself, and I know I am not hurt", and signed the card. The driver explained that his instructions required him in all cases where there is any doubt about a passenger's injuries to make such inquiries. He denied making the statements attributed to him by plaintiff about striking her with the door.

J. A. Adams, a funeral director of Charleston, W. Va., and Mrs. Adams, a graduate nurse, strangers to the parties concerned, were passengers on the bus en route to Huntington to attend church. They sat in the third seat from the door and on the same side where plaintiff alighted. It was a clear day in May and the windows of the bus were down. Plaintiff was the only passenger to get off at this particular stop. They both fully corroborated the testimony of the bus driver as to what happened and both deny that the bus door ever closed on plaintiff. They deny that plaintiff ever fell forward upon her hands and knees, but to the contrary say she seemed to lose her balance and staggered back against the bus door, and then walked to the sidewalk.

Mrs. Elva Young, another passenger, sitting on the second seat on the same side of the bus, also en route to church, fully corroborates the testimony of the bus driver. She, too, denies that the door ever closed on plaintiff and denies plaintiff's statements as to what happened thereafter. She corroborates all other eye witnesses to the effect that plaintiff did lean back against the wide open bus door as she was alighting. These three passengers had no interest in the outcome of the case. Their demeanor on the witness stand was sharply contrasted with that of plaintiff. Plaintiff's testimony as to what happened, standing alone, did not seem very reasonable. When considered in the light of the physical facts and the testimony of all other eye witnesses, her testimony would seem wholly unreasonable.

After the accident plaintiff said she went home, and then went to work that same day and the next day. A few days later she claims to have become so dis-

abled as a result of this accident that she has not even been able to teach her Sunday School class for the past two years. She testified that she spent most of the first year in bed, but on cross-examination admitted that she had frequented night clubs and been quite active socially, sometimes until the early hours of the morning. She stated that prior to this accident she had no trouble with her head, but Edith Jordan, a friend who lived in the same house with her, testified that plaintiff had complained about her head before the accident and stated that she thought she had a tumor on the brain. Plaintiff testified that she did not drink to intoxication, but Edith Jordan testified that they were all required to move out of one house because the landlady came in about daylight one morning and "found her son there with Mrs. Kaufman, both drunk". Plaintiff is otherwise contradicted as to her conduct and the nature and extent of her injuries, and was evasive upon cross-examination.

Rule 59 of Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, governs the granting of new trials. Since this is a matter of procedure, rules of state practice are not followed in the federal courts. In the recent case of Ætna Casualty & Surety Company v. Yeatts, Aug. 22, 1941, 122 F.2d 350, 352, Judge Parker, speaking for the Fourth Circuit Court of Appeals, said: "On such a motion it is the duty of the judge to set aside the verdict and grant a new trial, if he is of opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict. The exercise of this power is not in derogation of the right of trial by jury but is one of the historic safeguards of that right."

In the same opinion, Judge Parker cites Mr. Justice Williams, speaking for the Supreme Court of Pennsylvania in Smith v. Times Publishing Co., 178 Pa. 481, 36 A. 296, 35 L.R.A. 819, as follows: "When the verdict is rendered by the jury, it is to the court of which they are a part. It is recorded upon the minutes of the court, and becomes a part of the record of the trial; but it does not thereby become a judgment of the court unless the judge is satisfied with it, and specially or by general order or rule so directs. He has a responsibility for the result no less than the jury, for it is his duty to see that right and justice are done, so far as this may be practicable in the particular case. If he is not satisfied with the verdict, it is his duty to set it aside, and grant a new trial before another jury."

There is a distinction in the rules to be followed in granting a new trial and in directing a verdict, stated by the Fourth Circuit Court of Appeals in Garrison v. United States, 62 F.2d 41, 42, and Roedegir v. Phillips, 85 F.2d 995, 996, as follows: "Where there is substantial evidence in support of plaintiff's case, the judge may not direct a verdict against him, even though he may not believe his evidence or may think that the weight of the evidence is on the other side; for, under the constitutional guaranty of trial by jury, it is for the jury to weigh the evidence and pass upon its credibility. He may, however, set aside a verdict supported by substantial evidence where in his opinion it is contrary to the clear weight of the evidence, or is based upon evidence which is false; for, even though the evidence be sufficient to preclude the direction of a verdict, it is still his duty to exercise his power over the proceedings before him to prevent a miscarriage of justice."

This verdict is contrary to the clear weight of evidence and, in my opinion, it is necessary for me to set it aside to prevent a miscarriage of justice. The verdict is contrary to the credible evidence in the case. I can not, and should not, give approval to a verdict so offensive of true justice.

An order may be granted setting aside the verdict of the jury and awarding the defendant a new trial.