NELLIE MARIE BARTON, Administratrix, Appellant, v. J. D. ARMSTRONG, doing business as J. D. ARMSTRONG COMPANY, Appellee.

No. 46881.

JULY 29, 1946.

Hays, Guernsey & Powers, of Centerville, for appellant.

Valentine & Valentine, of Centerville, for appellee.

WENNERSTRUM, J.—The administratrix of the estate of Marion Charles Barton, plaintiff in this case, brought an action for damages against J. D. Armstrong, doing business as the J. D. Armstrong Company, alleging in two counts that the deceased was killed by being struck and run over by a trailer tractor owned by the defendant and operated by one of his employees. In Count I of the petition general allegations of negli-

gence were pleaded and it was therein particularly alleged that plaintiff was relying upon the doctrine of res ipsa loquitur. In Count II specific allegations of negligence were set out. The defendant in his answer specifically denied any negligence on his part or that of his agent or employee and denied, as alleged in plaintiff's petition, that there were no eyewitnesses to the accident. At the conclusion of plaintiff's testimony the defendant first moved the court to dismiss Count II of plaintiff's petition, which motion was sustained. No error is claimed by the plaintiff by reason of this ruling. Thereafter the defendant moved the court to dismiss Count I of plaintiff's petition, which motion was also sustained. The plaintiff administratrix has appealed from the ruling of the trial court dismissing the petition and directing a verdict for the defendant.

The factual situation disclosed by the evidence presented by the plaintiff, as material to this appeal, is as follows: On June 6, 1945, the defendant was employed by a construction company to transport a bulldozer, an earth-moving machine, from a point in Missouri to a designated point in Appanoose County, Iowa. The defendant, as a means of carrying out the arrangements to move the bulldozer, sent a trailer tractor owned by him and driven by one of his employees to transport the machine. The bulldozer was, through some misunderstanding, unloaded at the Exline farm, a place distant from where its use was contemplated. During the evening of June 6, 1945, defendant's driver of the trailer tractor, accompanied by the decedent, returned to where the bulldozer had been unloaded, for the purpose of reloading and moving it to the correct location. It is shown that Marion Charles Barton, the decedent, was an employee of the owner of the bulldozer; that he had accompanied defendant's employee on the trip occasioned by the necessity of reloading it.

Harold Exline, who is the only witness who testified for the plaintiff as to the accident, stated in part, as follows:

"I remember the occasion of Mr. Barton being run over, and practically killed. It was June 6th in the evening. The bulldozer was parked directly in front of my garage. The garage is to the south and west of the house, and the highway

in front of the house runs north and south. It is a straight road. The surface is tol'able level until you get in front of the drive, then it's a gradual slope on down to the bridge. It is a shaled surface. The weather on June 6th was damp and cool. It had been raining a little, and some spots of shale would be solid, and some had broken through to the mud. Where Mr. Barton lay it was quite solid, but the opposite side of the road was quite soft. It was soft where the tractor first started to back, then it got on solider ground. The first thing I noticed, with reference to Mr. Barton's injury, was that both shoes were off laying right there at his feet. I did not see him get knocked down. It was dark. I did not see him until the lights of the truck reflected on him. He was laying on his elbow, on his left elbow, more or less facing toward the house, and his legs were straight on the ground. When I first saw him, I was standing in our front room lighting the gasoline lantern, and watching the truck back in. When I first saw Mr. Barton, he was already down. He was almost in front of the right front wheel. When the truck had backed on up there was room for my car to pass between Mr. Barton and the front of the truck, which would place him, if the truck was straightened up, almost in front of the left front wheel. It would depend on the position of the truck, as to whether he was in front of the right front wheel. When I drove through to pick him up he was in front of the left front wheel. The truck had been squared up, but when I first saw him, he was in line with the right front wheel. When I first got to him, I could see the mud marks on his clothing and his belt was busted, and the front of his trousers was ripped open. I could tell from the house he had been injured, and the position he was in, he was twisted and laying on his left elbow * * *.''

The foregoing testimony is the entire record presented as to what occurred at the Exline farm.

It is our conclusion that the question that must receive consideration is whether or not the doctrine of res ipsa loquitur has application to the facts as presented by the plaintiff's testimony. It should also be kept in mind that the defendant's employee, the driver of the trailer tractor, gave no testi-

mony whatsoever bearing upon the issues involved in this case.

The application of the doctrine of res ipsa loquitur has been commented upon in the case of Peterson v. DeLuxe Cab Co., 225 Iowa 809, 811, 281 N. W. 737, 738, where this court approved the statement therein quoted, as follows:

." " '* * * does not apply except where the circumstances attending the injury are of such a character that the accident complained of could not well have happened in the ordinary course of events without the defendants' negligence and the instrumentalities of the injury were within the exclusive control of the defendants * * *.' "

In the case of Hunt v. Chicago, B. & Q. R. Co., 181 Iowa 845, 850, 165 N. W. 105, 106, L. R. A. 1918B, 369, where the court discusses the applicability of the doctrine of res ipsa loquitur, it is stated:

"If the circumstances disclosed are not such as tend to indicate negligence, then they cannot be deemed to speak."

In 38 Am. Jur. 999, 1000, section 303, in commenting upon the res ipsa loquitur rule and its application, it is stated:

"* * * if the facts and circumstances of the occurrence give rise to conflicting inferences, one leading to the conclusion of due care and the other to the conclusion of negligence, the doctrine does not apply. The res ipsa loquitur rule cannot apply in a case where the circumstances surrounding the accident are not such as to raise a presumption of negligence."

With these rules of law before us we are presented with the inquiry whether, under the record in this case, the rule of res ipsa loquitur should apply. There is no evidence of any circumstances in the record which would raise a presumption of negligence on the part of defendant's employee and agent or the application of the doctrine of res ipsa loquitur. Inasmuch as this is our conclusion, under the record, we necessarily must hold that the doctrine of res ipsa loquitur cannot be applied.

There are other numerous cases and authorities bearing

upon this question from which we might quote and thereby further substantiate our conclusion but we do not deem it necessary to do so.

By reason of the fact that we have reached the conclusion that the doctrine of res ipsa loquitur has no application to the facts presented in this case, this is determinative of this appeal, as there is no evidence of negligence shown, and we do not deem it necessary to discuss the other brief points which have been commented upon by the appellant.

We therefore hold that the trial court was correct in its ruling in directing a verdict for the defendant and that it should be affirmed.—Affirmed.

All JUSTICES concur.