**KUPER v. JOHNS (two cases).**
**Civ. A. Nos. 570, 569.**

United States District Court
S. D. West Virginia,
Huntington Division.
Dec. 4, 1950.

**306**

C. F. Bagley, Jr., and L. E. Woods, Jr., Huntington, W. Va. (Campbell & McNeer, Huntington, W. Va., on brief), for plaintiffs.

W. H. Dysard, of Ashland, Ky., John E. Jenkins and John E. Jenkins, Jr., of Huntington, W. Va. (Dysard & Dysard, Ashland, Ky., and Jenkins & Jenkins, Huntington, W. Va., on brief), for defendant.

WATKINS, District Judge.

These two actions resulted from an automobile accident which occurred at the intersection. of Washington Avenue and Third Street West, in the City of Huntington, W. Va., on August 3, 1949. The car in which plaintiffs were riding was struck from behind while it remained stopped at the intersection in obedience to an electric traffic signal. Mary Kuper, the driver of the car which was stopped for the traffic signal, was severely injured, and brought suit against Hiram W. Johns, Jr., the driver of the car which hit her to recover damages for her injuries, pain and suffering and loss of earnings. Her husband, John S. Kuper, who was a passenger in the car driven by his wife, brought suit to recover medical expenses incurred or paid on account of his wife's injuries, and for damages to his automobile. The two cases were consolidated for trial, the jury being instructed to render separate verdicts. Although the jury was carefully and fully instructed to return a verdict for either the plaintiff or defendant in each case, in the Mary Kuper case, the jury returned two verdicts as follows: "We, the jury, find for the plaintiff and assess her damages at nothing," and "We, the

jury, find for the defendant." In the John S. Kuper case the verdict was as follows: "We, the jury, find for the plaintiff and assess his damages at $2,600.00". Thereupon, the court instructed the jury that in the Mary Kuper case they could not find a verdict for both the plaintiff and the defendant, and instructed them to return to their room and consider further their verdict in that case. Later they returned the following verdict: "We the jury find for the defendant".

The plaintiff, Mary Kuper, has made a motion to set aside the verdict for the defendant in her case because the verdict is against the clear weight of the evidence, and is also contrary to the instructions of the court. If this motion is denied, both plaintiffs say that the verdict in the Mary Kuper case is inconsistent and cannot be reconciled with the verdict of the same jury on exactly the same facts in the John S. Kuper case and move that both verdicts be set aside.

There is very little dispute in the evidence as to what occurred at the time of the accident. Traffic at the intersection of Washington Avenue and Third Street West was controlled by the usual automatic electric traffic signal located at the center of the intersection and hanging in an overhead position, the traffic signal consisting of a red stop light, a yellow caution light and a green go light. Both automobiles were traveling in an easterly direction on Washington Avenue, and the accident occurred at this intersection when the front of the automobile driven by the defendant, Hiram W. Johns, Jr. collided with the rear of the automobile being driven by the plaintiff, Mary Kuper. There were three occupants in the 1949 Nash sedan driven by Mary Kuper, including Mary Kuper, the driver, her 18-year-old son, Marlin Reese, and John S. Kuper, her husband, all of whom were sitting on the front seat. The defendant, Hiram W. Johns, Jr., was driving a 1949 Oldsmobile convertible and was the only occupant of that automobile.

The Kuper family was returning to their home in Huntington after looking at a lot which they had just purchased. Mary Kuper testified that when about one-half block away from the intersection the

light was green, and that before she reached the intersection it turned to yellow caution. She then dropped her hand over the side of the car, giving a stop signal with her left hand, and applied her brakes to stop before reaching the crosswalk. She was not driving more than 15 to 20 miles per hour before the light turned from green to yellow caution. She came to a complete stop at the crosswalk on the west side of the intersection. At the time she came to a complete stop the light had turned red and she shifted into low gear, preparing to move on as soon as the light turned green again. There was another automobile stopped on Third Street West at the intersection, heading in a northerly direction, and waiting to turn right onto Washington Avenue. Just as Mary Kuper came to a stop on the red light, the other car to her right at the intersection made a right-hand turn into Washington Avenue on a green light. Within a few seconds thereafter while she was still stopped on a red light, defendant's car struck the Kuper car from the rear, causing a terrific impact. The collision was so severe that the rear bumper of the Kuper car was not sufficient to withstand the impact. Both rear fenders and the trunk on the Kuper car were crushed, indicating that defendant's car had struck the Kuper car head-on across the entire rear part of the Kuper car. Only the front grille work on defendant's car was damaged. Mary Kuper is corroborated in this testimony by her husband and her son who testified to the same effect.

Washington Avenue was of black-top or asphalt construction, the street was dry and the weather clear. The accident occurred about 8:15 P.M., just at dusk. Mary Kuper was severely injured, it being necessary for her to engage the services of nine different doctors. She was admitted to three different hospitals for various operations and examinations over a period of many months, the most serious operation being one in which her neck was cut from the base of the skull downward for a distance of four to four and one-half inches, the spinal cord was entered, certain nerve roots were compressed and a disc hernia

was removed. She has not yet recovered from her injuries. Her doctor and hospital bills and out-of-pocket expenses have thus far amounted to $2,592.04. That she suffered substantial damages as the result of this accident is not denied.

To meet this testimony, one witness testified for the defendant. This witness was the defendant himself, who did not deny most of the facts related above. For example, defendant admitted that there was a traffic light at this intersection, and that he had known it was there prior to the accident. He did not deny that the traffic light turned to caution prior to the time that Mary Kuper reached the intersection, nor that it was red at the time of the collision. He was not asked about these matters. All he stated was that it was green the last time he looked at it. This was when he was still several car lengths behind the Kuper car and before the Kuper car had reached the intersection. When he looked at the Kuper car after looking at the light, he saw that it was stopping. He did not say how much time elapsed after he saw the light was green before the Kuper car stopped. He did not deny that Mary Kuper, the driver of the car in front, put out her left hand and gave him a stop signal. He admitted that he saw the red brake lights on the rear of the Kuper car flash red, as she applied her brakes and slowed down. Defendant admitted that the Kuper car was stopped or almost stopped at the time of the collision. He did not deny that the Kuper car was traveling only 15 to 20 miles per hour as it approached the intersection. He did not deny the evidence of the three occupants of the Kuper car to the effect that after the Kuper car had stopped at the intersection and before it was struck by defendant's car, an automobile which had been stopped on Third Street West, south of the intersection, proceeded into the avenue and turned to the right in the avenue going in an easterly direction, indicating that the traffic light facing the street was green and the light on Washington Avenue was red. Defendant attempted to explain his conduct by the statement that the Kuper car stopped suddenly, and that

he did his best to stop. He did not say and was not asked whether he applied his brakes or what he did to stop, or avoid the accident. Defendant's general statement that the Kuper car stopped suddenly is not corroborated by any other witness. Indeed, all the admitted facts and the undenied facts refute such general statement. The fact that she was traveling at a very moderate rate of speed (15 to 20 miles per hour) and put out her left hand and gave a stop signal, would all tend to refute that she was making an emergency stop. The evidence is devoid of any apparent reason for her to make a sudden stop. All the evidence indicates extreme care on her part, not negligence. Under these circumstances the statement of defendent that she stopped suddenly and that he did the best he could to stop, is neither credible nor reasonable. The terrific force with which the defendant struck the Kuper car, as evidenced by the damages to the Kuper car, and the distance the two cars traveled after the accident before they came to a stop, and all the evidence, make it evident that the defendant was proceeding up the avenue more than two car lengths behind the Kuper car. In view of the evidence of the three witnesses for the plaintiff to the effect that plaintiff had stopped her car at the crosswalk, changed gears and had waited for a few seconds before she was struck from behind, and in view of the nature and extent of the damages to the Kuper car, the estimate of defendant that he was following the Kuper car "about two car lengths, a little more, a little less," is not credible. Defendant did not deny that another car came out of Third Street West and turned to the right on Washington Avenue in front of the Kuper car after the Kuper car had stopped for the intersection, as related by the three witnesses for plaintiff. If that be true, then defendant had to be more that two car lengths behind the Kuper car, and his estimate is neither reasonable nor credible.

██ Under this evidence it is clear that Mary Kuper was required to stop by the traffic signal, and that she did stop her car in obedience to that traffic signal at the crosswalk. She did everything within her power to notify the defendant that she was stopping. The red brake lights on the rear of her car notified defendant that she was applying her brakes to stop her car, and she gave the required hand signal. Under these circumstances there is no substantial evidence which would justify the jury in finding her guilty of contributory negligence. On the other hand the defendant knew that he was approaching an intersection controlled by a traffic light. It was his duty to keep his car under control so as to be able to comply with the directions of the traffic signal and avoid a collision with a car in front of him which would stop to comply with that traffic signal. The evidence shows clearly that defendant did not have his car under control as required by law, and this would be putting it mildly. The verdict of the jury in the Mary Kuper case was against the clear weight of the evidence.

It is clear to me that the jury was confused, as indicated by the fact that it first returned verdicts for both plaintiff and defendant in the Mary Kuper case.

██ Rule 59 of the Federal Rules of Civil Procedure, 28 U.S.C.A., governs the granting of new trials. Rules of state practice are not followed in the federal courts, since this is a matter of procedure. In the case of Aetna Casualty and Surety Company v. Yeatts, 4 Cir., 122 F.2d 350, 352, Judge Parker said: "On such a motion it is the duty of the judge to set aside the verdict and grant a new trial, if he is of opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict. The exercise of this power is not in derogation of the right of trial by jury but is one of the historic safeguards of that right."

In the same opinion Judge Parker cites Mr. Justice Williams, speaking for the Supreme Court of Pennsylvania in Smith v. Times Publishing Co., 178 Pa. 481, 36 A. 296, 308, 35 L.R.A. 819, as follows: "When the verdict is rendered by the jury, it is to the court of which they are a part. It is recorded upon the minutes of the court, and becomes a part of the record of the trial; but it does not thereby become a

judgement of the court, unless the judge is satisfied with it, and specially or by general order or rule so directs. He has a responsibility for the result no less than the jury, for it is his duty to see that right and justice are done, so far as this may be practicable in the particular case. If he is not satisfied with the verdict, it is his duty to set it aside, and grant a new trial before another jury."

Even though the evidence be sufficient to preclude the direction of a verdict, it is the duty of the judge to set the verdict aside, where, in his opinion it is contrary to the clear weight of the evidence, or is based upon evidence which is false, because it is still his duty to exercise his power over the proceedings before him to prevent a miscarriage of justice. Garrison v. United States, 4 Cir., 62 F.2d 41, 42; Roedegir v. Phillips, 4 Cir., 85 F.2d 995, 996; Kaufman v. Atlantic Greyhound Corporation, decided by this court and reported in, D.C., 41 F.Supp. 252; Baltimore & Ohio Ry. Co. v. Saunders, 4 Cir., 159 F.2d 481, 485.

The verdict in the Mary Kuper case is contrary to the clear weight of evidence, and, in my opinion, it is necessary for me to set it aside to prevent a miscarriage of justice. The verdict is contrary to the credible evidence in the case.

An order may be entered setting aside the verdict of the jury in the Mary Kuper case, and awarding her a new trial. This makes it unnecessary for me to decide the alternate motion.