**Mrs. Lola Reed SATTLER and Herman Sattler**

v.

**The GREAT ATLANTIC & PACIFIC TEA COMPANY and The Travelers Insurance Company.**

**Civ. A. No. 4478.**

United States District Court
W. D. Louisiana, Lake Charles Division.

Aug. 11, 1955.

J. J. Tritico, Lake Charles, La., for plaintiff.

John A. Hickman, Lake Charles, La., for defendant.

HUNTER, District Judge.

At the close of plaintiffs' case, defendant moved for a directed verdict, upon which motion the court reserved its ruling. At the close of all the evidence the defendant, by oral motion, moved for a directed verdict, upon which motion the court also reserved its ruling. The case was then submitted to the jury. The jury failed to return a verdict and was discharged on April 14, 1955. Upon these facts, plaintiff contends that this court has lost jurisdiction to pass favorably upon the defendant's motions made pursuant to Rule 50(a) and Rule 50(b) of Fed.Rules Civ.Proc., 28 U.S.C.A. Succinctly stated, the issue to be decided is whether or not the court, having reserved judgment upon motions for directed verdicts, made pursuant to Rule 50(a) and 50(b), respectively, loses jurisdiction to pass upon said motions when, after the jury had been unable to agree upon a verdict, the moving party fails within ten days after discharge of the jury to further move for judgment in accordance with Rule 50(b).[1]

The human mind is so constituted that the merits of both sides of a controversy appear very clear and very palpable to those who respectively espouse them, and both sides usually grow clearer as the controversy is prolonged. That is the case here relative to the court's jurisdiction over the motions filed under Rule 50 (a) and (b).

### Rule 50(b)

Plaintiff cites and relies upon Johnson v. New York, N. H. & H. R. Co., decided November 17, 1952, 344 U.S. 48, 73 S.Ct. 125, 126, 97 L.Ed. 77, and further argues, in his brief of July 11th, that the only true motions for directed verdicts are motions under Rule 50(a). Defendant vigorously insists that Johnson is not applicable, and cites authority in support of the proposition that a trial judge's express reservation of decision on a motion for a directed verdict relieves a party from any duty to renew the motion after discharge of the jury.[2] Our first reaction to plaintiff's suggestion that this court might lose jurisdiction over the motions which it had itself reserved unless one of the parties to the litigation takes action of some kind was that it was at variance with reason and justice. However, a careful reading of the history of Rule 50(b), textbook authorities, and cited cases, has led me to the conclusion that the rationale of the Johnson case is applicable here. The following excerpts from that case are controlling:

"On several recent occasions we have considered Rule 50(b). We have said that in the absence of a motion for judgment notwithstanding the verdict made in the trial court within ten days after reception of a verdict the rule forbids the trial judge or an appellate court to enter such a judgment. Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849. We repeated that construc-

---

1. A further motion was made here on April 28, 1955, which was some 14 days after the date of the discharge of the jury.

2. Stevens v. G. L. Rugo & Sons, Inc., D.C.

Mass., 115 F.Supp. 61, reversed on other grounds 1 Cir., 209 F.2d 135; Mullen v. Fitz Simons & Connell Dredge & Dock Co., D.C., 11 F.R.D. 348; Daniels v. Pacific-Atlantic S.S. Co., D.C., 120 F. Supp. 96.

tion of the rule in Globe Liquor Co. v. San Roman, 332 U.S. 571, 68 S.Ct. 246, 92 L.Ed. 177, and reemphasized it in Fountain v. Filson, 336 U.S. 681, 69 S.Ct. 754, 93 L.Ed. 971.

\* \* \* \* \*

"Rule 50(b) was designed to provide a precise plan to end the prevailing confusion about directed verdicts and motions for judgments notwithstanding verdicts. State procedure was no longer to control federal courts as it had in the Redman [Baltimore & Carolina Line, Inc., v. Redman, 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636] and Kennedy cases [Aetna Ins. Co. v. Kennedy, to Use of Bogash, 301 U.S. 389, 57 S.Ct. 809, 81 L.Ed. 1177]. Federal courts were to be guided by this new rule, which provided its own exclusive procedural program. It rejected the New York procedure applied in the Redman case, which permitted judgment to be set aside even though no motion to do so had been filed after verdict. Instead it approached more closely the Pennsylvania rule, relied on in the Kennedy case, under which judgments contrary to verdicts would not be awarded in the absence of specific timely motions for them. But Rule 50(b) departed from the New York and Pennsylvania procedures by making it wholly unnecessary for a judge to make an express reservation of his decision on a motion for directed verdict. *The rule itself made the reservation automatic.* A court is always 'deemed to have submitted the action to the jury subject to a later determination' of the right to a directed verdict if a motion for judgment notwithstanding the verdict is made 'Within 10 days after the reception of a verdict \* \* \*.' This requirement of a timely application for judgment after verdict is not an idle motion. This verdict solves fac-

tual questions against the post-verdict movant and thus emphasizes the importance of the legal issues. The movant can also ask for a new trial either for errors of law or on discretionary grounds. The requirement for timely motion after verdict is thus an essential part of the rule, firmly grounded in principles of fairness. See Cone v. West Virginia Pulp & Paper Co., supra, 330 U.S. at pages 217–218, 67 S.Ct. at pages 755–756. Poor support for its abandonment would be afforded by the mere fact that a judge makes an express reservation of a decision which the rule reserves regardless of what the judge does.

"Rule 50(b) as written and as construed by us is not difficult to understand or to observe. Rewriting the rule to fit counsel's unexpressed wants and intentions would make it easy to reintroduce the same type of confusion and uncertainty the rule was adopted to end. In 1946 this Court was asked to adopt an amendment to the rule which would have given appellate courts power to enter judgments for parties who, like this respondent, had made no timely motion for judgment notwithstanding the verdict. We did not adopt the amendment then. 5 Moore, Federal Practice (2d ed. 1951) ¶ ¶ 50.01(7), 50.01(9), 50.-11.

"No sufficiently persuasive reasons are presented why we should do so now under the guise of interpretation."

We conclude that the requirement of a timely motion after verdict or discharge of jury is an essential part of Rule 50(b) and the mere fact that the trial judge made an express reservation of decision will not permit granting of relief under Rule 50(b) in the absence of a timely motion after the verdict or discharge of the jury.

### Rule 50(a)

■ Rule 50(a) reads as follows, to-wit:

"A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. *A motion for a directed verdict shall state the specific grounds therefor.*" (Emphasis ours.)

Nothing decided in the Johnson case is applicable to the decision reserved under Rule 50(a). Rule 50(b), by its own limitation, refers only to those motions made *at the close of all the evidence.* The motion under 50(a) is not to be confused with the motion under 50(b) where there is an automatic reservation with a mandatory necessity for timely action by the moving party after verdict.

Plaintiff says that 50(a) itself provides for no right of reservation or later determination of the motion by the court. The answer to this contention is that nowhere in 50(a) is there evidence of any intention to take from the court its power to reserve a motion at the end of plaintiff's case and later dispose of that motion. This is a prerogative of the court which antedates the federal rules, and as stated in the Stevens case, supra, where the court has taken a motion under advisement under Rule 50(a), it not only can but *must* decide the issue.

Plaintiff relies also on the well-settled rule that if a motion under 50(a) asking for a directed verdict at the close of plaintiff's case is denied, and the defendant thereupon presents his own evidence, this constitutes a waiver of the motion unless a renewed motion for a directed verdict is made at the close of all the evi-

dence. That rule is not applicable here because the directed verdict made at the close of the plaintiff's case was not denied, and because of the fact that defendant did renew the motion for a directed verdict at the close of all the evidence. It is therefore the conclusion of this court that the reservation made under Rule 50(a) is still pending, has never been disposed of, and the court still retains jurisdiction over that motion, and not only *can* but *must* pass upon the motion. Stevens case, supra.

■ We now pass to the merits of the motion itself. The question is one of law: Is there any evidence in the record which, if believed, would authorize a verdict against defendant?

"A motion for a directed verdict may only be granted when a verdict the other way would have to be set aside by the court." Standard Accident Ins. Co. of Detroit, Mich. v. Winget, 9 Cir., 197 F.2d 97, 100; Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Galloway v. United States, 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458.

"The trial court must view the evidence and all inferences most favorably to the party against whom the motion is made. A directed verdict is proper only where there is no controverted material issue of fact for the jury." Sec. 1075, Vol. 2, Barron & Holtzoff; Vives v. Serralles, 1 Cir., 145 F.2d 552; Browder v. Cook, D.C., 59 F.Supp. 675.

It is improper to direct a verdict for defendant, if when all the plaintiffs' evidence is fairly considered in the light most favorable to plaintiff, and every reasonable inference fairly to be drawn therefrom is given full effect, the jury might find in favor of plaintiff—even though judge may not believe plaintiffs' evidence or may think that the weight of the evidence is on the other side. Dawson v. McWilliams, 5 Cir., 146 F.2d 38; Kaufman v. Atlantic Greyhound, D.C., 41 F.Supp. 252.

Plaintiff, Mrs. Sattler, on the afternoon of Wednesday, February 25, 1953, entered the defendant A & P store for the purpose of making a purchase of groceries. After entering the store she proceeded therein in a northerly direction for the purpose of securing a metal basket, which is customarily furnished by A & P to its customers. Prior to reaching the exact spot where the basket was located, she slipped and fell on a piece of "withered" mustard leaf, with dimensions of approximately two inches in width and three inches in length. Charging that the fall had resulted from the sole proximate negligence of the store, its agents and employees, plaintiffs seek judgment against defendant and its liability insurer. Defendants deny any negligence and say that even if there had been negligence, plaintiff could not recover because of Mrs. Sattler's alleged contributory negligence.

So far as the defendant's request for a directed verdict is based on contributory negligence, that was clearly an issue for the jury on its apprisal of all the facts in evidence. But as a result of my appreciation of the evidence and of the Louisiana law, I have concluded that defendant's motion should be granted because there was no evidence legally sufficient to establish negligence in law or in fact attributable to the defendant.

■■ The law of Louisiana governing the facts and circumstances presented here by the evidence is in accord with the consistent weight of common law jurisprudence to be found in decisions of both state and federal courts of other jurisdictions. It is the settled jurisprudence that the doctrine of res ipsa loquitur is inapplicable to a storekeeper whose obligation toward his customer is the use of ordinary care to keep aisles, passageways, and floors in a reasonably safe condition, and no presumption of fault of the storekeeper arises from the mere fact of an injury to a customer. It is well settled in Louisiana that in order to impose liability on a storekeeper for injuries to a business invitee, the dangerous condition must have been created by the storekeeper, or must either have been known to him or have existed for such a time that in the exercise of ordinary care he would have discovered it; or there must be a showing of careless general practices in the store constituting recurrent dangers to the safety of the customers. Boucher v. Paramount-Richards Theatres, La.App., 30 So.2d 211; Peters v. Great Atlantic & Pacific Tea Co., La.App., 72 So.2d 562; Bartell v. Serio, La.App., 1938, 180 So. 460; Powell v. L. Feibleman & Co., Inc., La.App., 1939, 187 So. 130; Battles v. Wellan, La.App., 1940, 195 So. 663; Greeves v. S. H. Kress & Co., La.App., 1940, 198 So. 171; Lawson v. D. H. Holmes Co., Ltd., La.App., 1941, 200 So. 163; Joynes v. Valloft & Dreaux, Inc., La.App., 1941, 1 So.2d 108; Relf v. Aetna Casualty & Surety Co., La.App., 1941, 1 So.2d 345; Hays v. Maison Blanche Co., La.App., 1947, 30 So.2d 225.

The record in the instant case contains no proof whatsoever that the object in question was caused to be on the floor by the actions of the A & P store employees, nor does the record disclose any evidence to prove that defendant's agents or employees had any knowledge of the presence of the object on the floor. There is nothing to show that there were any careless general practices in the store constituting recurrent dangers to the safety of others. The only evidence on the question of general practices was given by Mr. Bourque. His testimony shows that the company had a complement of five "check-out clerks" whose duties consisted of, among other things, policing the immediate area in front of and around their counters, including the check-out counter where the leaf on which Mrs. Sattler alleges to have stepped, was located. His testimony is to the further effect that there were employed, on the day and at the time in question, at least five "bag boys", whose duties were to assist patrons by taking

their bags from the check-out counters to the automobiles in the parking area, and who likewise had the further duty of policing this very same area around the check-out counter and basket areas. No evidence can be pointed out evidencing that anything other than reasonable care was used in the management of the store to keep its premises in a condition of safety. I do not say that the foreseeability that customers will drop vegtables imposes no duty of care on the storekeeper. On the contrary, the storekeeper here evidently recognized such a duty and had five check-out clerks and five bag boys, whose duties, among other things, consisted in policing the general area where this accident occurred. This is not a case of careless general practices in a store. If it were, then, as pointed out in the Whalen case,[3] it would not matter whether defendant's agents and employees were specifically notified or not.

The sole theory of negligence, as I see it, advanced by plaintiff is founded on the claim that the A & P store had constructive notice of the presence of the mustard leaf on the floor premises and permitted it to remain there an unreasonable length of time. The only witnesses offered by plaintiff conceivably bearing on this issue were:

(1) Plaintiff, Mrs. Sattler

(2) Plaintiff, Mr. Sattler

(3) Ed Bourque, store manager of A & P

(4) Mrs. Bessie Dean, employee of A & P

Mrs. Sattler's testimony went to the identity of the object on which she stepped, and her descriptions of it being "rather wilted." We do not recall Mrs. Sattler giving any further testimony proving or tending to prove, by reasonable inference, the time during which the object actually was or could be assumed to have been on the floor, except possibly her testimony to the effect that during the time required for her to get out of her automobile and arrive at the point where she fell, she noticed no store employees or customers leave the premises.

Mr. Sattler's testimony is solely directed to corroboration of Mrs. Sattler's recollection that during the time required for her to leave the car and arrive at the point where she fell, no customers or store employees left the store.

The testimony of Mr. Bourque, presented by way of cross-examination, adds nothing to the plaintiffs' case on this issue. His testimony was principally confined to the methods employed by him as store manager in keeping the premises in a reasonably safe condition. This testimony has already been referred to, but it might be well to add his testimony to the effect that if the employees performed their instructed duties—and there is no evidence to the contrary—the vegetable could not have remained on the floor undetected for more than a minute or two.

Mrs. Dean, a store employee, testified that she had no actual prior knowledge that the leaf was on the floor, and did not know how long it was or could have been there. She estimated, however, that in view of the cleaning routine employed by the store, the vegetable matter could not have remained on the floor more than a minute or two.

Plaintiff insists that the condition of the object being "withered", as testified to by Mrs. Sattler, is probative evidence to establish or to reasonably infer that it had remained on the floor an unreasonable length of time. To accept such as proof would be basing an inference upon an inference. As pointed out by counsel for defendant, such proof was expressly rejected by the Louisiana courts in the Powell case, supra, with respect to the color of a banana, and in the Boucher case, supra, with respect to popcorn; by the Eighth Circuit Court of

3. Whalen v. Phoenix Indemnity Co., 5 Cir., 222 F.2d 121.

Appeals in the Campbell case[4] with respect to the speculation required to determine how long tobacco juice had been on the floor by the fact that its outer rim or perimeter had dried; by the Michigan and Connecticut courts with respect to the appearance and condition of dry, dirty frankfurter skins and fatty meat. Edwards v. F. W. Woolworth Co., 129 Conn. 245, 27 A.2d 163; Evans v. S. S. Kresge Co., 290 Mich. 698, 288 N.W. 322, 291 N.W. 191. More to the point, however, is the decision of our own Fifth Circuit Court of Appeals in the comparatively recent case of Stowe v. S. H. Kress & Co., Dec. 11, 1947, 164 F.2d 593, 594, where the court said:

> "The fact that the banana peel was black is not indicative of the length of time that it was allowed to stay on the stairway. As stated by the Court below: 'In the first place there is nothing in the evidence here as to what caused it to turn black. That is all counsel's theory, without any evidence. You would have to take judicial notice that it stayed right there on the floor until it turned black; that it did not turn black from staying on the banana stalk too long.'"

Believing as we do that there is no evidence in this record, which, if believed, would authorize a finding against the defendant, the motion for a directed verdict is sustained.

Nothing decided in Whalen v. Phoenix Indemnity Co., supra, detracts or is in conflict with the holding here. Judge Tuttle, in his opinion in the Whalen case, considered the case to be pitched and predicated upon the doctrine of res ipsa loquitur. The doctrine was neither pleaded in the instant case, nor was evidence adduced to bring the case within such theory of fault; there was no proof here of any general practice of customers dropping vegetable leaves in the vicinity of the counters; there was no proof of the failure on the part of defendant to provide a regular and systematic method of policing the area.

If the appellate court should hold that this court still has jurisdiction over the motion for a directed verdict filed at the conclusion of all of the evidence, as the Massachusetts district court held in the Stevens case, supra, then, in the absence of any instructions from the appellate court to the contrary, I would grant that motion, also because, in my opinion, there would still exist no basis for a finding of fact based either on the evidence or on reasonable inferences therefrom sufficient to sustain a verdict.

A judgment in conformity with the opinion herein expressed should be presented.

---

4. Campbell v. F. W. Woolworth & Co., 8 Cir., 117 F.2d 152.