**Lauren M. LUCAS, Plaintiff,**

v.

**CITY OF JUNEAU, a municipal corporation; and Sears, Roebuck and Company, a foreign corporation, Defendants.**

**No. 7174–A.**

District Court, Alaska,
First Division, Juneau.

Dec. 4, 1958.

Mildred R. Hermann, Juneau, Alaska, for plaintiff.

H. D. Stabler, Juneau, Alaska, for defendant City of Juneau.

Frederick O. Eastaugh, and Robert J. Annis, of Robertson, Monagle & Eastaugh, Juneau, Alaska, for defendant Sears, Roebuck & Co.

KELLY, District Judge.

The plaintiff has brought this suit to recover $90,000 in damages for personal

injuries allegedly suffered from a fall in the defendant Sears, Roebuck and Company (hereinafter "Sears") store, and for the aggravation of those injuries due to the alleged negligence of the City of Juneau (hereinafter "City") in the operation of its ambulance service. The plaintiff seeks to hold the defendants jointly liable for the extent of his aggravated damages. The cause was tried without a jury.

The substance of the evidence in the instant case is this. The defendant store is but one of a chain operated throughout the United States, and is located in the downtown area of the defendant City. The testimony elicited during the course of the trial indicates that the plaintiff entered the defendant Sears' store on the day of October 2, 1954, and made several visits to the credit manager's office on the mezzanine floor of the store for the purpose of making business inquiries. On the occasion of his last visit in the late afternoon, the plaintiff engaged the credit manager in a brief conversation and then turned away from her office to descend to the main floor. Before reaching the stairway connecting the two floors, the plaintiff stepped on a loose object causing his legs to extend outward from his body. The plaintiff lost his balance and landed on his back. The mezzanine floor was well illuminated at the time of the accident. Although no one saw the plaintiff fall, the credit manager heard a "thump," and saw the plaintiff arise from the floor. The plaintiff informed the credit manager that he had slipped on a small stub of a pencil present on the floor a few feet distant from the steps, and handed her the stub pencil. The plaintiff exclaimed that he had been hurt as a result of the fall but refused immediate medical attention. The plaintiff then walked from the store to his car. Subsequently, the plaintiff was hospitalized for his injuries.

After a number of days of confinement in a Juneau hospital, the plaintiff deemed it advisable to depart for Seattle to obtain medical treatment at a Veterans Administration Hospital. Arrangements were made by the local Veterans Administration office for the plaintiff to depart by plane for Seattle, Washington. Since the plaintiff was not expected to be ambulant on the date of his departure, the defendant City was contacted to provide the necessary ambulance transportation of plaintiff to the airport some miles distant from the city. On the day of the plaintiff's Seattle flight, the ambulance arrived at the hospital to pick up the bedridden plaintiff, and proceeded from there in the direction of the airport. While driving the plaintiff to the airport, the ambulance driver suffered a sudden attack of unconsciousness. The ambulance veered from the highway and drove over rough ground, coming to a gradual halt. The plaintiff was jolted by the sudden shocks of the rough terrain, and his condition was aggravated.

The plaintiff apparently suffered from a long history of back disturbances and injuries prior to the dates of his fall in the defendant Sears' store and the accident in the city ambulance. Much testimony was introduced concerning the extent and seriousness of both plaintiff's new injuries and his pre-existing condition. Specifically, this testimony referred to injuries to the plaintiff's spine and other areas of his back.

As a basis of relief, the plaintiff alleges that the defendant Sears wrongfully and negligently permitted a loose object to be located on its floor, and that the defendant Sears should be held liable for resulting injuries from his fall, and for the aggravation of those injuries due to the ambulance mishap, flowing proximately from the original negligence of Sears.

The plaintiff further claims that the defendant City wrongfully, negligently and carelessly employed the ambulance driver in its services, thereby causing the plaintiff's condition to become aggravated.

■ There is no apparent conflict in court decisions in enunciating the general rule that a storekeeper is not an insurer of the safety of his customers. French v. Heibert, 1953, 175 Kan. 296,

262 P.2d 831; Landry v. News-Star-World Pub. Corp., La.App.1950, 46 So. 2d 140. But it cannot be disputed that under the circumstances presented here, the plaintiff was a business invitee to whom the defendant Sears owed a duty to exercise reasonable care in maintaining safe premises. Twine v. Norris Grain Co., Mo.App.1950, 226 S.W.2d 415; Feir v. Town & City of Hartford, 1954, 141 Conn. 459, 106 A.2d 723. However, the law makes it incumbent upon the plaintiff to prove that the defendant Sears has breached this duty, and that plaintiff has suffered injury flowing from this breach. Palmer v. Crafts, 1936, 16 Cal.App.2d 370, 60 P.2d 533.

As an offer of proof, the Court has been urged to accept the plaintiff's contention that since the object upon which he allegedly slipped was on the floor of the defendant's store, the doctrine of "res ipsa loquitur" is applicable and the defendant should be presumed to be negligent. The plaintiff further maintains that in failing to rebut this presumption of negligence, the defendant should be held liable to the full extent of the plaintiff's injuries. However, this doctrine upon which the plaintiff relies is applicable only where an instrumentality shown to be under the exclusive control of the defendant has produced some injury, and the injury that has resulted is normally of the type that would not have occurred but for some negligence of the one in whose hands control of the instrumentality rests. J. C. Penney Company v. Livingston, Ky. 1954, 271 S.W.2d 906; Barton v. Armstrong, 1946, 237 Iowa 734, 23 N.W.2d 912. Although a storekeeper is obligated to exercise ordinary care to keep the premises reasonably safe for the protection of those patronizing his store, the mere proof of injury within the store does not raise an inference that the proprietor has control over a loose object causing injury within the store nor does it presume that he was negligent. In cases such as this, it is in most instances the question of control that is in dispute and the issue to be determined. For

this reason, the Court is not inclined to view the doctrine of "res ipsa loquitur" as being properly invoked to raise a presumption of negligence under the circumstances presented here. Vaugh v. Montgomery Ward & Co., 1950, 95 Cal. App.2d 553, 213 P.2d 417; Sattler v. Great Atlantic & Pacific Tea Company, 1955, 18 F.R.D. 271.

In cases involving loose objects, the courts generally distinguish between the situations where the object causing injury was placed on the floor by the storekeeper or his servants, or placed there by some third person. In the former situation, if it is proved that the object causing injury was placed there by the employer or his servant, or that either was actually aware of its presence, a prima facie case of negligence would be established. J. C. Penney, Inc., v. Kellermeyer, 1939, 107 Ind.App. 253, 19 N. E.2d 882. However, the plaintiff has not sustained this burden. The object alleged to have caused the plaintiff's injury was a pencil in common use, but not of the type used by the employees of defendant Sears. No evidence whatsoever was introduced tending to prove to whom the pencil belonged, that it was placed or dropped in the aisle by one of the defendant store's employees, or that any employee had actual knowledge of its presence. It would be mere speculation for the Court to make these assumptions.

In the absence of the above proof, it was necessary for the plaintiff to establish, whether by circumstantial or direct evidence, that the object was in the aisle of the defendant's store for such a long period of time that the defendant could be said to have had constructive notice of its presence. Gargaro v. Kroger Grocery & Baking Co., 1938, 22 Tenn.App. 70, 118 S.W.2d 561. Lee v. Meier & Frank Co., Or.1941, 114 P.2d 136. Schmelzel v. Kroger Grocery & Baking Co., 1951, 342 Ill.App. 501, 96 N.E.2d 885. Messner v. Webb's City, Inc., Fla. 1952, 62 So.2d 66. Lindsay v. Eccles Hotel Company, 1955, 3 Utah 2d 364, 284 P.2d 477. Applying the well settled rule of these decisions to the evidence pre-

sented, the plaintiff has failed to prove that the defendant Sears was negligent. The object causing injury has been sufficiently identified as to its nature, and there can be little doubt that its presence as such on the floor of the store would tend to create a hazard as to customers. Yet there is no substantial evidence indicating that the object was in the aisle of the defendant store for any period of time other than for the moment it was stepped on by the plaintiff. From this circumstance alone, the Court would not be justified in inferring that the object had been there for such a period of time that, had the defendant Sears exercised reasonable care, it could have known of the presence of the object.

The plaintiff further alleges that the defendant failed to carefully inspect the aisles and keep them clear from objects that might cause injury. Liability is sought to be predicated on this proposition on the basis of evidence that the defendant store was swept once each morning and the accident occurred in the late afternoon. The plaintiff stresses with great emphasis a judicial pronouncement in Sears, Roebuck & Co. v. Peterson, 8 Cir., 1935, 76 F.2d 243, 247, wherein it was stated that:

> "The duty of defendant with reference to the safety of these premises, however, was a continuing one, and was not necessarily discharged by a single act of 'cleaning every morning.' If, during the day, the premises became unsafe for the use of customers, they could not properly be left in such condition until the morning cleaning process might again place them in safe condition."

However, as the Court understands this statement, negligence cannot be eradicated by act of maintenance where it is shown that a storekeeper had actual or constructive notice of the presence of a loose object on the floor of his store. Yet, it cannot be inferred from a mere failure to perform acts of inspection with a degree of regularity that a loose object was present for such a period of time so as to afford the defendant notice of its presence, and thereby establish that the defendant was negligent. Particular attention is directed to the decision in J. C. Penney v. Kellermeyer, supra. In that case, the most favorable evidence presented was to the effect that the store was swept once each night, and the accident occurred in the middle of the afternoon. The court stated very succinctly that [107 Ind.App. 253, 19 N.E.2d 886]:

> "From this fact the appellee says that the jury was warranted in drawing the inference that the loose object was on the floor for some time before the injury. Such an inference, in our opinion, would not be a reasonable one and would of necessity be based on mere guess and speculation."

For the above-stated reasons, the Court is of the opinion that sufficient evidence has not been introduced upon which it could reasonably conclude that the defendant Sears was negligent in any manner.

The plaintiff has joined the City in this action and it remains to be resolved if the City can be held responsible for the aggravation of the plaintiff's condition due to the mishap of the City's ambulance. Testimony of the various witnesses clearly establishes that the sudden unconsciousness of the ambulance driver, Wilkerson, was the last act in the chain of events leading to the accident of October 20, 1957. The only actual testimony bearing on the physical and mental condition of the driver prior to the date of the accident is that taken from Wilkerson's deposition. In his statement under oath, he testified that on numerous occasions he had suffered spells of dizziness, but other than on the date of transporting the plaintiff in the ambulance, he had never undergone attacks of unconsciousness. His condition is best summarized in his statements that his attacks of dizziness were preceded by warnings from 30 to 60 seconds before the attacks and that "sometimes I can tell an hour before if I am going to get sick. And if I do so, I just go stay clear of

everything." Wilkerson further related that he believed himself to be a petit mal epileptic victim, and that he suffered a nervous condition. However, in applying for membership in the Juneau Fire Department, which operates the municipal ambulance, the ambulance driver failed to state any physical or mental disturbance that would reflect upon his competency to engage in the services of the defendant City. There is some evidence that the City employee responsible for assigning drivers to the City vehicles was aware that Wilkerson suffered dizzy spells. However, due to the fact that the employee was deceased at the date of trial, the extent of his knowledge is uncertain.

■ It is in reference to Wilkerson's pre-existing condition allegedly causing his unconsciousness on the date of the accident that the plaintiff contends that the City was negligent in engaging him as a driver of a City vehicle. As the defendant City's counsel correctly contends, no relief can be predicated on any negligent conduct of the ambulance driver where the plaintiff's sole allegation is limited to one of negligent employment. Under these circumstances, the doctrine of respondeat superior is not applicable. General Electric Company v. Rees, 9 Cir., 1954, 217 F.2d 595.

■ It has been recognized that a duly licensed individual is prima facie competent to operate a motor vehicle. Piquet v. Wazelle, 1934, 288 Pa. 463, 136 A. 787. An employer need make only a reasonable investigation into an employee's qualifications to determine his competency. Eleason v. Western Casualty & Surety Co., 1949, 254 Wis. 134, 35 N.W.2d 301. There is authority for the defendant's contention that the duty of an employer to third persons to make any investigation does not extend to providing a medical examination of the employee to determine his fitness. General Electric Company v. Rees, supra. However, it is admitted by the defendant City that a responsible City employee had some knowledge of the ambulance driver's affliction of dizzy spells. It is for the Court to determine from the evidence if the defendant City had knowledge of such actual facts so as to put them upon inquiry, which, if pursued, would apprise them that Wilkerson's condition as such would render him incompetent to operate a motor vehicle due to foreseeable spells of unconsciousness. See Levy v. McMullen, 1934, 169 Miss. 659, 152 So. 899; General Electric Company v. Rees, supra.. This Court feels that the evidence does not warrant an affirmative finding.

■ The ambulance driver referred to his attacks as periods of dizziness which were preceded by preliminary symptoms giving him ample notice of their time of occurrence. He further stated that he had never suffered an attack of unconsciousness during the history of his illness, other than on the date of the accident. Through an admission of the plaintiff's own expert witness, it was presented in evidence that the mere presence of dizzy spells does not necessarily render an individual incompetent to operate a motor vehicle, or, more appropriately, give sufficient reason to conclude that an individual may suffer an attack against his conscious state. Even if the Court were to impose upon the defendant the duty to provide Wilkerson with a medical examination, due to the services he performed directly to the plaintiff, or because the City had some knowledge of facts to put them on inquiry that Wilkerson's condition might possibly make him less competent to perform these services, there is no showing here that had such an examination been made the City could have anticipated some injury occurring similar to that of the plaintiff. Wilkerson failed to state any reason why he should have anticipated any attack of unconsciousness, although he did admit he believed himself to be a petit mal epileptic victim and that he suffered from a nervous condition. The expert witness testifying for the plaintiff stated further that an epileptic victim would be of doubtful competency in operating a vehicle due to likely episodic impairment of consciousness. However, there was testimony by the

ambulance driver that he had undergone treatment for his illness, whatever it might have been. The expert testimony was not based on any personal examination of Wilkerson, nor did it reflect any consideration of the personal history of Wilkerson and the treatment he alleged to have undergone. At most, the expert testimony was based on a general supposition of a true and genuine condition of epilepsy. From the testimony presented, it is impossible to determine the actual physical condition of Wilkerson, whether his illness was in an advanced or arrested stated. Had the plaintiff alleged the negligence of Wilkerson as a basis of relief, the City would have been compelled to produce evidence to show why Wilkerson should not have anticipated his attack of unconsciousness. Keller v. Wonn, 1955, 140 W.Va. 860, 87 S.E.2d 453. However, due to the plaintiff's limited choice of a theory of relief, the burden is on him to show why the City should have anticipated Wilkerson's attack. No substantial evidence was presented to prove what the City might have anticipated as a result of Wilkerson's employment. There is little evidence to justify any finding of negligence of the City in engaging Wilkerson in its services. The burden of proof in this regard was not sustained.

The ambulance operated and maintained by the City was donated to the municipality by a local fraternal organization. It appears that in some instances a fee was charged for its use, but only under certain conditions. It further appears that the City did not compensate those requested to service the ambulance, but that these services were rendered voluntarily. There is no showing that the operation of the ambulance was a profit-making activity, or that it was likely to result in a profit to the City. It does not appear that the fees charged for the use of the ambulance would be in excess of its cost of operation. The City alleges that it cannot be held responsible for any negligence in the operation of the ambulance since it is a legitimate function of the government and immune from liability. That the operation of a municipal ambulance service may be considered a governmental function is supported by the decision of City of Newark v. United States, D. C., 1957, 149 F.Supp. 917, affirmed, 3 Cir., 1958, 254 F.2d 93. The fact that incidental economic benefits may inure to the City as a result of the operation of a governmental service does not necessarily require that the service be characterized as proprietary or quasi-corporate, since these economic benefits are merely an alternative method of providing a service that would otherwise be supported by taxation. See Day v. City of Berlin, 1 Cir., 1946, 157 F.2d 323.

The question as to whether the operation and maintenance by the City of an ambulance service can be considered a governmental or quasi-corporate function is not material to a decision in this case, and the Court need not generate confusion by attempting to distinguish the situations where a municipality may be held liable irrespective of whether it be engaged in a governmental activity. However, since the question has been raised, it might be well to point out here what the Court finds to be the situation under the Alaska statutes and previous court decisions. We are not unmindful of the authority for the defendant's argument that a municipality is generally immune from liability for negligence while it is engaged in governmental activities. Carr v. City of Anchorage, 1953, 14 Alaska 409, 114 F.Supp. 439; Vol. 3 Opinions of the Attorney General of Alaska, 160 (1924). However, the controlling decision seems to be Tuengel v. City of Sitka, D.C.1954, 118 F.Supp. 399, affirmed, 9 Cir., 1957, 245 F.2d 61, wherein a municipality was declared responsible for its negligence in the operation and maintenance of a charitable hospital, even though the function may be governmental in nature. Although the opinion in reference to that point was rendered in denying a motion to dismiss and was not actually a decision of the case, it does indicate a possible trend of the interpretation of the law

in this jurisdiction. The object to be accomplished by the ambulance service, that of service to the infirm, is so closely related to hospitalization benefits, that it can be said to come within the scope of the opinion of Tuengel v. City of Sitka, supra, and the City may be held liable for any negligence in the operation and maintenance of the ambulance.

If the City had been found negligent it might be liable under the provisions of Section 56–2–2, A.C.L.A.1949. This section provides:

"An action may be maintained against any of the public corporations in the Territory mentioned in the last preceding section (incorporated town, school district, or other public corporation of like character) in its corporate character, and within the scope of its authority, or *for an injury to the rights of the plaintiff arising from some act or omission of such public corporation.*" (Emphasis supplied.)

The statute not only removes any procedural disability to maintain a suit against the municipality, but is also substantive in character. This section, as such, was adopted from the Oregon Code in 1887 and it is presumed that the decisions of Oregon prior to that date interpreting the provision were incorporated into the Alaska statute. See Starns v. Humphries, 9 Cir., 1951, 189 F.2d 357. Earliest Oregon decisions held the municipality liable under this statute for negligent maintenance of streets and crosswalks, although the city was held to be engaged in a governmental function. McCalla v. Multnomah County, 1872, 3 Or. 424; Sheridan v. City of Salem, 1886, 14 Or. 328, 12 P. 925. And the Alaska court, in the earliest decision involving this section, interpreted it in the same manner. Krause v. Town of Juneau, 1905, 2 Alaska 633.

Although the above decisions involved only questions of liability where streets or appurtenances were involved, there are no words of limitation in the statute or case decisions to the effect that liability of a municipality should be confined to those situations. See contra: Carr v. City of Anchorage, supra. The statute in its simplest language imposes liability "for an injury to the rights of the plaintiff arising from some act or omission" of the municipality. Apparently, it was with a broad construction of general liability in mind that the Oregon legislature saw fit to amend its statute in 1887 (a short time after it was adopted for Alaska) so as to absolve the municipality from liability while engaged in governmental functions, with the exception of actions brought in contract. See Grant County v. Lake County, 1889, 17 Or. 453, 21 P. 447. No such amendment was ever made to the Alaska statute after its adoption, and since the earliest Alaska decision interpreted the statute as substantive in nature, the statute should be given that construction under these circumstances, and the city may be held liable for its "act or omission" causing injury to the plaintiff. If the legislature did not intend to impose liability in the exercise of governmental functions, the Act should be amended.

The foregoing shall constitute Findings of Fact and Conclusions of Law unless the parties desire additional Findings or Conclusions.

Judgment in accordance herewith may be submitted.